27808.  QUILLIAN, trustee, *v.* EQUITABLE LIFE ASSUR-
ANCE SOCIETY OF THE UNITED STATES.

DECIDED NOVEMBER 25, 1939.

*Evins, Quillian & Evins, Winsor Letton,* for plaintiff.

*MacDougald, Troutman & Arkwright, Dudley Cook, W. H. Schroder, Robert S. Sams,* for defendant.

STEPHENS, P. J.  Ralph R. Quillian. as trustee, sued the Equitable Life Assurance Society of the United States.  The petition set out in substance the following:  On December 5, 1919, the assurance society issued its policy of accident and illness disability insurance to Dr. Garnett W. Quillian, which policy provided for

the payment to the insured of a weekly indemnity of $125 for a total disability resulting from an accident or from disease. Pertinent portions of the policy are as follows: "Equitable Life Assurance Society of the United States hereby insures the person named as applicant in the copy of application for this policy, endorsed hereon, or attached hereto, *subject to the provisions, conditions, and limitations herein contained,* against loss resulting directly and independently of all other causes, from bodily injuries effected during the term of this policy solely through external, violent, and accidental means, and against disability from disease, contracted during the term of this policy as follows: Part I: If such injuries shall wholly and continuously disable the insured from date of accident and prevent him from performing any and every duty pertaining to his occupation, and during the period of such continuous disability but within 200 weeks from date of accident, shall result in death, or within 90 days from date of accident, irrespective of total disability, result in like manner in death, the society, upon surrender of this policy properly released, will pay the principal sum and in addition weekly indemnity as provided in part II to the date of death. Part II A: If such injuries shall wholly and continuously disable the insured from date of accident and prevent him from performing any and every duty pertaining to his occupation, the society will pay for the period of such continuous disability but not exceeding 200 consecutive weeks the weekly indemnity hereinafter specified. After the payment of weekly indemnity for 200 weeks as aforesaid the society will continue the payment of weekly indemnity of the same amount thereafter so long as the insured shall be wholly and continuously disabled by such injuries from engaging in any occupation or employment for wage or profit. B: Or, if such injuries shall continuously disable the insured from date of accident and prevent him from performing one or more important daily duties pertaining to his occupation, or for like continuous disability following total disability, the society will pay for the period of such disability, but not exceeding 26 consecutive weeks, a weekly indemnity of one-half of the amount payable per week of total disability. Part III A: If such disease shall wholly and continuously disable the insured and prevent him from performing any and every duty pertaining to his occupation and shall confine him to the house,

the society will pay the weekly indemnity hereinafter specified and within the limit hereinafter named, for the period of such confinement to the house. B: Or, if such disease shall wholly and continuously disable the insured and prevent him from performing any and every duty pertaining to his occupation but shall not confine him to the house, the society will pay weekly indemnity of one-half the amount hereinafter specified and within the limit hereinafter named, for the period of such disability, whether preceded by a period of confinement to the house or not. Indemnity under part III, subdivisions A and B, for confining or nonconfining disability, singly or combined, shall be payable for not exceeding 200 weeks, in the aggregate during the currency of this policy."

Thereafter the insured became totally disabled as a result of disease, and the insurer paid to the insured the specified weekly indemnity for 200 weeks, the payments after April, 1936, being made to Ralph R. Quillian, as trustee. At this time all the right, title, and interest in and to the policy and the benefits thereunder were assigned to such trustee. On October 11, 1938, the insurer paid to the trustee $267.86, representing disability weekly benefits under the policy for a period of two weeks and one day. The 200 weeks expired November 25, 1938. At the time of paying this indemnity, the insurer notified the trustee that such payment completed the 200 weekly payments, and that no further payments would be made under the policy for disability resulting from the disease of the insured. On October 11, 1938, the insured was and now is and has been continuously since then totally disabled as a result of illness which did prevent and now prevents him from performing any and every duty pertaining to his occupation, and has confined and now confines him to the house. After October 11, 1938, the insurer forwarded to the insured the usual and regular notice calling for the payment of the regular quarterly premium due on December 5, 1938, in the sum of $85.75. Pursuant thereto the insured or the trustee on such date paid this premium to the insurer, and demanded that the disability benefits for a disability resulting from disease under the policy be paid by the insurer covering the period subsequent to October 11, 1938. The insurer refused to make these payments, and the trustee of the insured filed suit to recover a sum representing such disability benefits up to January 24, 1939.

The petition was brought in two counts, the first being based upon the theory that under a proper construction of the policy the insurer was liable for a continuance of the payments for disability resulting from disease. The second count was on the theory that the insurer, by requesting and receiving the regular quarterly premium in the same amount as theretofore paid throughout the life of the policy, waived the strict terms and conditions of the policy seeking to limit the payment of disability benefits resulting from illness to a period of 200 weeks, and became estopped to insist upon the terms and conditions of the policy seeking to impose this limitation. The insurer demurred generally to both counts. To the judgment sustaining the demurrer and dismissing the petition the plaintiff excepted.

■ The plaintiff contends that the provisions of the policy are ambiguous and capable of two constructions, and that under the principles of law relative to the construction of provisions in insurance contracts the interpretation most favorable to the object to be accomplished by the contract of insurance should be adopted. It is contended that a proper construction of the policy renders the insurer liable for a continuance of the payment of disability benefits for total disability resulting from disease. We can not agree with this contention. The contract sued on plainly, specifically, and unambiguously provides that the insurer insures the insured, "subject to the provisions, conditions, and limitations" contained in the policy, "from bodily injuries effected during the term of this policy solely through external, violent, and accidental means, and against disability from disease, contracted during the term of this policy, as follows:" Then follow the provisions as to the payment of the principal sum for accidental death, and then for payment of certain weekly benefits for total and partial disability resulting from an accident, and provides that as to total disability resulting from accident that "after the payment of weekly indemnity for 200 weeks as aforesaid the society will continue the payment of weekly indemnity of the same amount thereafter so long as the insured shall be wholly and continuously disabled by such injuries from engaging in any occupation for wage or profit." Then follows part III, which appears under the heading *"Indemnity for disability caused by disease. Weekly indemnity."* It is provided thereunder that "if such disease shall

wholly and continuously disable the insured and prevent him from performing any and every duty pertaining to his occupation and shall confine him to the house, the society will pay the weekly indemnity hereinafter specified and within the limit hereinafter named, for the period of such confinement to the house. . . Indemnity under part III, . . for confining . . disability, . . shall be payable for not exceeding 200 weeks, in the aggregate during the currency of this policy."

It seems to us to be plain and unambiguous that for disability confining one to the house resulting from disease the insurer will only pay the disability benefits provided for for not exceeding 200 weeks. The provisions relative to total disability resulting from accident have no connection with or application to, and should not be construed with, the provisions of the policy as to total disability benefits on account of total disability resulting from disease. They are plainly and distinctly separated and segregated therefrom in the policy in this case. "Where the language [of the insurance contract] is unambiguous and but one reasonable construction of the contract is possible, the court must expound it as made." *Calo* v. *Ætna Life Ins. Co.,* 164 *Ga.* 392, 398 (138 S. E. 787). "While a policy of insurance is to be construed liberally in favor of the object to be accomplished, and its provisions will be strictly construed against the insurance company, and where it is susceptible of two constructions, that construction will be adopted that is most favorable to the insured, yet a contract of insurance should be so construed as to carry out the true intention of the parties, and their rights are to be determined by its terms so far as they are lawful, and the language of the contract should be construed in its entirety, and should receive a reasonable construction and not be extended beyond what is fairly within its plain terms; and where the language fixing the extent of the liability of the insurer is unambiguous and but one reasonable construction is possible, the court must expound the contract as made." *Great American Indemnity Co.* v. *Southern Feed Stores,* 51 *Ga. App.* 591 (1) (181 S. E. 115). Properly construed according to the plain and unambiguous provisions of the policy sued on the insurer only contracted to pay the insured, if he was totally disabled as a result of a disease and confined to his house, the weekly indemnity specified for a period of not more than 200 weeks.

■ The plaintiff insists that the insurer, after terminating its payment of benefits for disability resulting from disease, by its action in forwarding the usual notice requesting the payment of the usual and regular premium on December 5, 1938, and by its acceptance of the payment of such premium, has waived a strict compliance with the terms of the policy, and is estopped to insist upon the terms and conditions of the policy seeking to impose the limitation of 200 weeks for the payment of the weekly benefits for total disability resulting from disease, and that by such action the entire contract is revived and further and additional weekly indemnity payments made obligatory. It is true that "Waiver by the acceptance of a premium is not based upon contract but on an estoppel of the company to insist on conditions of the policy inconsistent with the acceptance or retention of the premium." See 5 Cooley on Insurance, 4358. Also "Waiver . . may be created by acts . . insufficient to create a technical estoppel." *Sovereign Camp W. O. W.* v. *Bowman,* 40 *Ga. App.* 536 (150 S. E. 436).

However, it is our opinion that the insurer in this case, by sending out the premium notice to the insured and receiving the premium payment, after making the last payment of the weekly benefits under the policy for total disability resulting from disease, has not waived the provisions of the policy limiting the indemnity for total disability benefits paid for total disability resulting from disease to 200 weeks, nor estopped itself from now contending that it had paid to the insured or to his trustee the full weekly benefits called for by the provisions of such insurance contract for total disability resulting from illness. The policy provided for the payment of a principal sum in the event of accidental death, for the payment of weekly benefits for total disability resulting from accident, and for payment of weekly benefits for partial disability resulting from accident, as well as for payment of weekly indemnity for a specified period of time for total disability resulting from illness. Under its provisions the policy, so long as the premiums were kept paid, was still in force, and the company could not cancel it. The insured could enforce it in the event of an accidental injury covered thereby.

Furthermore, it will be remembered that, previous to sending the notice of premium due on the policy (still in life and on which the insurer would still be held liable in the event of a loss covered

by the remaining provisions thereof), the insurer had notified the insured that the last payment of weekly benefits made by it terminated its liability therefor, making the 200th weekly payment, and the conduct on its part in sending the premium notice, on a live and enforceable policy, and accepting the premium payment, will not have any effect on the liability of the company for the payment of weekly indemnity beyond the 200 weeks specified in the policy as the limit of its liability for total disability resulting from disease. See *Penn Mutual Life Ins. Co.* v. *Milton*, 33 *Ga. App.* 634 (127 S. E. 798). The principle of law that where an insurer accepts premiums after knowledge of facts which would entitle it to treat the policy as no longer in force is estopped from taking advantage of the forfeiture, as laid down in *Guarantee Life Ins. Co.* v. *Pughsley*, 57 *Ga. App.* 588, 591 (196 S. E. 265), has no application to the case under consideration. The plaintiff is contending that, because the company accepted this quarterly premium on a live policy, which it was obliged· to do under the terms of the contract, the contract should be rewritten by the court as to weekly indemnity for total disability resulting from illness, and that, instead of being entitled to 200 weeks indemnity as specified in the contract, because of sending out notice of premium due and accepting this premium payment, the insurer should be held liable for an additional period of time, and pay the insured or his trustee disability benefits not provided for in the original policy. The doctrines of waiver and estoppel are not to be extended so as to make a new contract, or to radically change the terms of the policy so as to cover additional subject-matter, or causes of loss, or causes of loss expressly excluded from the coverage of the policy. Neither waiver nor estoppel can be used to create a liability not created by the contract and never assumed by the insurer under the terms of the policy. Richards, Law of Insurance (4th ed.), 181, § 115.

Applying the foregoing principles, we are of the opinion that the court properly sustained the general demurrer, on the ground that no facts were alleged showing any liability on the part of the insurer for the payment of any further weekly benefits for total disability resulting from illness.

*Judgment affirmed. Sutton and Felton, JJ., concur.*