39635.   NATIONAL LIFE & ACCIDENT INSURANCE COMPANY v. WILSON.

DECIDED SEPTEMBER 5, 1962.

*Duncan M. Dew, III, Fulcher, Fulcher, Hagler & Harper,* for plaintiff in error.

*Isaac S. Peebles, Jr., David Levine,* contra.

NICHOLS, Presiding Judge. "The words used in policies of insurance, as in all other contracts, bear their usual and common significance (*Code* § 20-704 (2)), and policies of insurance are, as all other contracts, to be construed in their ordinary meaning. 'In construing contracts, "The cardinal rule of construction is to ascertain the intention of the parties. If that intention be clear, and it contravenes no rule of law, and sufficient words be used to arrive at the intention, it shall be enforced, irrespective of all technical or arbitrary rules of construction." *Code* § 20-702. "The contract of insurance should be construed so as to carry out the true intention of the parties." § 56-815. It was said by this court in *Great American Indemnity Co. v. Southern Feed Stores,* 51 Ga. App. 591 (181 SE 115): "While a policy of insurance is to be construed liberally in favor of the object to be accomplished, and its provisions will be strictly construed against the insurance company, and where it is susceptible of two constructions, that construction will be adopted that is most favorable to the insured, yet a contract of insurance should be so construed as to carry out the true intention of the parties, and their rights are to be determined by its terms so far as they are lawful, and the language of the contract should be construed in its entirety, and should receive a reasonable construction and not be extended beyond what is fairly within its plain terms; and where the language fixing the extent of the liability of the insurer is unambiguous and but one reasonable construction is possible, the court must expound the contract as made." See *Quillian v. Equitable Life Assurance Society,* 61 Ga. App. 138 (6 SE2d 108); *Morris Plan Bank v. Ginn,* 56 Ga. App. 681 (193 SE 783); *Fisher v. American Casualty Co.,* 194 Ga. 157 (21 SE2d 68); *Marbut v. Empire Life Insurance Co.,* 143 Ga. 654 (b) (85 SE 834).' *Robinson v. Washington National Ins. Co.,* 72 Ga. App. 19 (32 SE2d 855). These rules of construction are rather cogently summarized by the supreme court of one of our sister states in a case involving a policy of insurance containing almost the same language as the policy under consideration as follows: 'It is the function of the court to construe a contract of insurance as it is written, and the court by construction cannot create a liability not assumed by the in-

surer, nor make a new contract for the parties or one different from that plainly intended, nor add words to the contract of insurance to either create or avoid liability.' Miller v. World Insurance Co., 76 Idaho 355 (283 P2d 581)." *Pilot Life Ins. Co. v. Morgan,* 94 Ga. App. 394, 398 (94 SE2d 765).

Allegations in the petition must yield to contradictory facts shown in exhibits attached thereto. See *Dell v. Kugel,* 99 Ga. App. 551, 563 (109 SE2d 532), and citations. Therefore, the allegations in the plaintiff's petition that coverage existed under the terms of the policy, at the time of the death of the deceased, must yield to the policy if the policy shows that under the facts alleged in the petition as to the time of death no coverage existed.

The policy of insurance, attached as an exhibit provided as to extended term insurance: "Extended insurance—in event this policy lapses after premiums have been paid for the respective periods shown in the table on the following page, the amount of insurance shall be automatically continued in force as extended insurance for the term specified in such table. The term of extended insurance shall commence on the due date of the first premium in default." The applicable table showed that after premiums had been paid for five years extended insurance would be in force for the full amount of the policy for seven years and forty-four days while for policies where premiums had been paid for six years the policy would continue in force for eight years and three hundred and six days. This table showing the terms of extended coverage also provides: "Proportionate increase will be made in the values shown above for each additional completed quarter year of premium payments." The policy elsewhere provides as to premiums in grace periods: "If any premium is not paid when due, it shall be in default, and if not paid by the end of the grace period, described below, the policy shall lapse and cease to be in force except as otherwise provided in the policy. . . a grace period for four weeks (twenty-eight days) will be granted for payment of premium and while no premium is in default more than four weeks, the policy shall continue in force. If death occurs within the grace period, any premiums in default will be deducted from the amount of insur-

ance payable." Such language is clear and unambiguous in itself and the policy otherwise does not contain any language which makes it ambiguous. The premiums due on the policy of insurance were paid from the date of issue, June 23, 1947, until February 23, 1953. The premiums were paid for a period of five years and eight months. Under the terms of the policy the term insurance was extended after premiums were paid for each quarter year, but no provision was made for term insurance to be extended for premiums paid for less than a quarter year, and while a grace period of four weeks was provided in the policy (during which period the payments in arrears could be paid), so that the policy would remain in full force although the policy was in default during such time, the terms of the policy as to when the "extended insurance" would commence make it clear that such extended insurance begins on the day the policy was first in default and not the date the policy lapsed except for the extended coverage.

Under the express terms of the contract, coverage was extended from February 23, 1953, for seven years and forty-four days and for one-half the difference between seven years and forty-four days and eight years and three hundred and six days or for seven years three hundred fifty-seven and one-half days after February 23, 1953. February 16, 1961, is the date seven years three hundred and fifty-seven and one-half days after February 23, 1953, and the insured did not die until March 10, 1961. The policy lapsed completely before the insured died and under the express terms of the policy no coverage existed on the date the insured died. Accordingly, the petition failed to set forth a cause of action and the trial court erred in overruling the defendant's general demurrer.

*Judgment reversed. Frankum and Jordan, JJ., concur.*