William GRIZZLE

v.

GUARANTEE INSURANCE CO.

Civ. No. C–83–126–G.

United States District Court,
N.D. Georgia,
Gainesville Division.

Aug. 30, 1984.

Jefferson W. Willis, Gainesville, Ga., for plaintiff.

R. Clay Porter, Atlanta, Ga., for defendant.

## ORDER

O'KELLEY, District Judge.

Presently pending before the court in this diversity action is the defendant's motion for summary judgment and partial summary judgment.

Plaintiff William Grizzle purchased a Yamaha motorcycle from Cape's Motorcycle Sales on April 10, 1980. At the time of the purchase Grizzle also purchased insurance from defendant Guarantee Mutual Insurance Company (Guarantee). Following the issuance of Guarantee policy number GAC4392797, Grizzle was injured in a motorcycle accident on June 3, 1980.

Grizzle seeks to recover from Guarantee on the basis of four theories. First, Grizzle contends that Guarantee has breached its contract of insurance by failing to provide personal injury protection (PIP) and medical payments coverage (Medpay). Second, Grizzle contends that Guarantee and its agent K & K Insurance Agency (K & K) were negligent in that they failed to procure the insurance applied for and to issue a policy consistent with the insured's application. Grizzle also argues that Guarantee and K & K breached their duties to inspect the policy of insurance and the application for insurance for misrepresentations and advice inconsistent with Georgia law. Finally, Grizzle alleges that Guarantee is guilty of fraud and deceit, and argues that Guarantee should be estopped from denying PIP and Medpay coverage after representing that such coverage was automatically provided unless rejected in writing.

Grizzle's claim of negligent failure to procure insurance is precluded by the decision in *King v. Brasington*, 252 Ga. 109, 312 S.E.2d 111 (1984). *King* involved a business loan conditioned upon the assignment of life and disability insurance policies. Upon Mrs. King's death, Mr. King discovered that while his own life had been insured, no policy had ever been issued covering his wife. In rejecting King's claim for failure to procure, the court held that "if these were [sic] a failure of coverage, it was in the failure of the existing life insurance policy to cover Mrs. King's life as well as Mr. King's life." 252 Ga. at 111, 312 S.E.2d 111. The court held that under such circumstances Mr. King had a duty to inspect the policy and reject it if the coverage was not what he desired. This holding appears to preclude an action for negligent failure to procure if any policy has in fact been procured and the insured has had an opportunity to inspect the policy. *See, also, Hodges v. Mays*, 240 Ga. 643, 242 S.E.2d 160 (1978); *Ethridge v. Associated Mutuals, Inc.*, 160 Ga.App. 687, 288 S.E.2d 58 (1981). In the instant case it is clear that some insurance was procured, and that the plaintiff had an opportunity to read the contract. In fact, Grizzle's deposition unequivocally states that he read the policy in its entirety. In light of this testimony, the plaintiff's claim for negligent failure to procure insurance is even weaker than the claim asserted in *King, supra,* and cannot survive defendant's motion.

The plaintiff's argument that Guarantee should be estopped from denying cov-

erage does not comport with the well established rule in Georgia that "neither waiver nor estoppel can be used to create a liability not created by the contract and never assumed by the insurer under the terms of the policy." *Washington v. Hartford Accident & Indemnity Co.*, 161 Ga.App. 431, 432, 288 S.E.2d 343, *quoting Quillian v. Equitable Life Assurance Society of the United States*, 61 Ga.App. 138, 6 S.E.2d 108 (1939). *See also, Parris & Son, Inc. v. Campbell*, 128 Ga.App. 165, 169, 196 S.E.2d 334 (1973); *Allstate Ins. Co. v. Walker*, 114 Ga.App. 732, 152 S.E.2d 895 (1966).

In support of his claim that Guarantee was negligent in "breaching its duty to inspect its policy of insurance and application for misrepresentations and advice inconsistent with the laws of Georgia," Grizzle relies upon cases construing contracts of insurance to derive the basis for a claim based upon negligence, and therefore sounding in tort. Plaintiff cites, for example, *Travelers Indemnity Co. v. Whalley Construction Co.*, 160 Ga.App. 438, 287 S.E.2d 226 (1981) for the proposition that Guarantee "has the burden in preparing its policy to use language that is clear and precise." Plaintiff also relies on *Cincinnati Insurance Co. v. David*, 153 Ga.App. 291, 265 S.E.2d 102 (1980) for the premise that the test when construing an insurance contract is what a reasonable person in the position of the insured would understand it to mean. Undoubtedly these principles are correct, however they apply to the interpretation of contracts in actions arising ex contractu, not ex delicto. Plaintiff fails to refer the court to any authority which creates a duty on the part of the drafter of a contract to use unambiguous language which duty would, if breached, give rise to an action sounding in tort. In actuality the principles embodied in *Whalley Construction* and *David* are simply rules of construction designed to aid a court in construing an ambiguous phrase in a contract. In order to give rise to an action for damages, a misrepresentation must be made either knowingly or with reckless disregard for the consequences. In other words the fraud must be actual. *Irvin v. Lowe's of Gainesville*, 165 Ga.App. 828, 302 S.E.2d 734 (1983). "Innocent" or "constructive" fraud, wherein the defendant misrepresents without reckless disregard or knowledge, exists only as an equitable doctrine and will not support an action in tort for damages. *Irvin, supra.* This has been the law in Georgia since the decision in *Penn Mutual Life Insurance Co. v. Taggart*, 38 Ga.App. 509, 144 S.E. 400 (1928). Thus scienter is an essential element in actions for damages based on fraud. *Hertz Corp. v. Cox*, 430 F.2d 1365 (5th Cir.1970). As a result, summary judgment must be granted for the defendant as to the claim of negligent failure to procure insurance.

In Georgia there are five elements to the tort of fraud. These are a false representation by a defendant, scienter, intention to induce the plaintiff to act or refrain from acting, justifiable reliance by the plaintiff, and damage to the plaintiff. *Hardy v. Gordon*, 146 Ga.App. 656, 247 S.E.2d 166 (1978); *Shaw v. Cook County Fed. Savings & Loan*, 139 Ga.App. 419, 228 S.E.2d 326 (1976). Questions of fraud, bad faith and materiality of misrepresentation are normally for the jury. *Preston v. National Life and Accident Ins. Co.*, 196 Ga. 217, 237, 26 S.E.2d 439 (1943); *Adkins v. Lee*, 127 Ga.App. 261, 193 S.E.2d 252 (1972). In order to survive a motion for summary judgment, however, the existence of some issue of material fact must be evident. As Fed.R.Civ.P. 56(e) states

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

Plaintiff's deposition contains the unequivocal statement that he never had any discussion or written correspondence with anyone

at either Guarantee or K & K prior to his accident (Grizzle deposition at 29–30). In light of this statement, and the plaintiff's failure to controvert or explain it in any way, it is inconceivable that the defendant intended to deceive the plaintiff, or that the plaintiff was in fact deceived. Even if the employee of Cape's Motorcycle Sales deceived the plaintiff, no evidence of an agency relationship between the defendant and Capes has been introduced. Accordingly, the court must conclude that no issue of material fact exists with regard to the plaintiff's claim of fraud, and that summary judgment must be granted for the defendant on the fraud claim.

Guarantee also moves for summary judgment with regard to Grizzle's contract claim. Comprehensive Automobile Policy number GAC4392797 contains a section on its first page (the declarations page) marked "Attention," which states that

> Insurance is provided only for those coverages for which a specific Limit of Liability is shown and a Premium charged; and under Section D coverage to such vehicles as described herein, in accordance with the terms of this policy. Under no circumstances shall the Company's Liability exceed the Limit as stated herein. . . .

No limit of liability is shown, and no premium was charged, under either Section B, dealing with automobile medical payments, or that part of Section D covering personal injury protection.

Attached to the policy is a sheet entitled Supplemental Motorcycle Conditions Endorsement E–101. Paragraph B of the endorsement states that

> In consideration of the premium charged and the mutual covenants contained in the Policy, it is hereby agreed that where the word "automobile" appears in the Policy or Endorsements forming a part or attached thereto, it means a motor vehicle of the type described as a Motorcycle, Motorbike or Motorscooter.

Section D of the declarations page provides that it is "subject to endorsements and coverage page(s)/form(s) identified

here by number." Forms E–101C, E–372 and E–374 are identified by number. In addition, the letters SI are listed. A Supplemental Information (SI) sheet is also attached to the policy, and is at the heart of plaintiff's contract claim.

The SI sheet contains eight separately numbered and bordered sections, including sections dealing with PIP and Medpay. Section two of the SI sheet carries the heading Rejection of Uninsured Motorists Coverage. Above the heading are the italicized instructions "do not sign below if uninsured motorists coverage desired." The plaintiff's signature and the date are present in the appropriate spaces. Section four of the SI sheet carries the heading Rejection of Personal Injury Coverage, and also contains instructions stating "do not sign below if personal injury protection desired." The section also contains the following language:

> I understand that the state requires the [sic] Personal Injury Protection be afforded me under my motor vehicle liability policy unless I specifically reject this coverage. Accordingly I expressly reject Personal Injury Protection Insurance and direct the Insurer to issue my policy without the said coverage.

No signature is present.

Section six of the SI sheet carries the heading Rejection of Medical Payments Coverage. Located above the heading are instructions stating "do not sign below if medical payment desired." The section states that

> In accordance with the provisions of state statutes which permits [sic] an insured named in a policy to reject Medical Payments Coverage, the undersigned does hereby reject such coverage, being the coverage provided for medical payments or chiropractic payments, or both, for the protection of persons operating or riding in the insured vehicle from losses resulting from bodily injury or death. This rejection continues in effect on all future policies until further notice.

No signature is present in the appropriate spaces.

 Contrary to the representations made in the SI sheet, the Georgia Motor Vehicle Accident Reparations Act (the act), O.C.G.A. § 33–34–1 et seq., does not require Medpay or PIP coverage for motorcycles. The act defines a motor vehicle in relevant part, as a vehicle having more than three load-bearing wheels. O.C.G.A. § 33–34–2.[1] Guarantee argues that Medpay and PIP coverage in connection with motorcycles is not required by state law, and it is correct. The court cannot, therefore, hold that the coverage was extended by operation of law. Although the SI sheet clearly indicates that coverage will be provided in the absence of a signature indicating waiver by the insured the sheet does not indicate what amount of insurance is provided if the waiver is not made. Nor, as previously noted, does the declarations page provide a limitation of liability, or state a premium for the coverage which the plaintiff contends was provided. Under the Act, the minimum amounts of coverage for automobile insurance are governed by law. The Act does not require or provide for PIP or Medpay insurance with regard to motorcycles, and therefore no amount of coverage may be inferred by looking to the Act. Viewed in this light, it becomes apparent that although the plaintiff contends that he contracted for insurance, he cannot point to the amount of coverage provided, or to the premium paid for such coverage. The premium to be charged is an essential element of a contract for insurance. *Associated Mutuals, Inc. v. Pope Lumber Co.*, 200 Ga. 487, 496, 37 S.E.2d 393 (1946). *See also, Thurmond v. Sovereign Camp Woodmen of World*, 171 Ga. 446, 155 S.E. 760 (1930) (no recovery on incomplete contract of insurance); *Charter Investment & Development Co. v. Urban Medical Services, Inc.*, 136 Ga.App. 297, 220 S.E.2d 784 (1975) (alleged contract is unenforceable in absence of agreement as to cost). In *Charter* a corporation was retained to obtain a loan, and was promised a brokerage fee consisting of two percent of the loan amount. The broker failed to obtain a loan and eventually a loan was obtained from another source. The Georgia Court of Appeals held that the broker could not prevail, where its two percent commission could not be determined due to the fact that the broker did not procure a loan. The lack of mutuality of obligation was held to be fatal to the plaintiff's case. An analogous situation exists in the instant case, in which neither the premium to be paid nor the limit of liability were established. The terms are simply too indefinite for a contract for Medpay or PIP coverage to be found.

In light of the foregoing the court is constrained to conclude that the defendant's motion for summary judgment must be granted. The clerk is directed to enter judgment for the defendant.

---

1. This definition differs from that contained in Title 40 (motor vehicles and traffic). O.C.G.A. § 40–1–1(29) defines motor vehicle as "every vehicle which is self-propelled."