## 59007. CINCINNATI INSURANCE COMPANY v. DAVIS.

Birdsong, Judge.

Summary judgment arising out of insurance contract. The facts show that Davis was a landlord renting warehouse space to Hybrid Industries, Inc. Hybrid warehoused items such as television sets in the leased space. Apparently, Hybrid had not been the most prompt payer of rent and Davis, on occasion, had threatened dispossessory proceedings. On the last such occasion, Davis obtained a dispossessory warrant and, being unable to locate Hybrid's agent, had notice of the proceedings tacked on an interior window of the leased premises. At that time Hybrid was at least one month in default on rental. Davis' agent (his son) executed the dispossessory warrant. Accompanied by a deputy sheriff, Davis' agent removed a number of television sets from the warehouse and stored them in another of Davis' warehouses for safekeeping. Hybrid brought suit against Davis for conversion of the television sets (amounting to approximately $53,000) and for malicious use of process. The latter count was dismissed by Hybrid, and Hybrid obtained a partial summary judgment as to liability on the conversion count. The trial court based the grant of partial summary judgment upon the premise that service of notice on Hybrid was insufficient and that Davis

therefore had improperly taken control of the contents of the warehouse at the time of the dispossession. Davis turned the defense of the lawsuit over to his insurer, Cincinnati Insurance Co. Cincinnati undertook the defense with a reservation of rights on the ground that the contract of insurance did not grant coverage for conversion. Judgment was rendered against Davis for the conversion in the amount of $53,076 with an additional award of punitive damages in the amount of $46,000 (see *Davis v. Hybrid Industries,* 142 Ga. App. 722 (236 SE2d 854)). Davis unsuccessfully made demand upon Cincinnati to recover the $99,076 as his insurer. The present suit was then instituted by Davis against Cincinnati. Both parties moved for summary judgment. The trial court granted summary judgment in favor of Davis and denied summary judgment to Cincinnati. It is the grant and denial of these summary judgments that form the basis of Cincinnati's appeal *Held:*

Davis had a comprehensive general liability policy of insurance with Cincinnati, similar to an umbrella policy. He also had purchased scheduled underlying policies for specific coverages that formed a part of the umbrella policy. The schedule of underlying policies delineate several differing policies with varying limits of coverage.

Cincinnati urged that the general provisions of the umbrella policy govern all the underlying policies scheduled. The umbrella policy provides payment for all sums which Davis became legally obligated to pay as damages because of an "occurrence" but excluded property damage while that property was in the care, custody or control of the insured or as to which the insured was for any purpose exercising physical control. Moreover, Cincinnati contended that the policy covered only an "occurrence" which was defined as an "accident" which results in property damage neither expected nor intended from the standpoint of the insured. Cincinnati argues first that after conversion the television equipment was within the care and control of Davis and secondly that conversion is an intentional act, not an "accident"; thus, Davis' asserted property damage resulted from wrongfully converting the television sets to his own use. In either event, Cincinnati urges that the

exclusionary provisions of the umbrella policy barred recovery by Davis. While Cincinnati advances other variations of these arguments, as we perceive them, all the arguments for non-liability are covered in these two contentions.

Davis contended successfully before the trial court that he was not seeking recovery under the terms of the comprehensive general liability policy but more specifically under the personal injury policy. That policy, without reference to an accident, occurrence or possession of property, provided that Cincinnati would pay on behalf of the insured Davis all sums which Davis should become legally obligated to pay as damages because of injury (called personal injury in this policy) arising out of one or more "offenses" committed in the conduct of Davis' business. The policy then lists three groups of "offenses": the first deals with false arrest and related acts; the second deals with libel or slander; and the third deals with wrongful entry or eviction or other invasions of the right of private occupancy.

Cincinnati contended that "personal injury" does not extend to property injuries, but that argument has no merit. The personal injury policy by its own terms expressly includes as "personal injury" injury both to the person, i.e., bodily injury, or injury to a person's reputation, as well as injury to property. That the policy intended to treat bodily injury separately from property injury is manifested by the differing limits of coverage, i.e., $300,000 for bodily injury and $100,000 for property damage.

We observe that in this record, 37 pages are devoted to copies of the several policies of insurance which existed between Cincinnati and its insureds, including Davis. These policies with supplements, schedules, limitations and exclusions relate to differing types of insurance coverage, including physical damage to property; rental value insurance; vandalism and malicious mischief; perils of windstorm, hail, explosion, riot, civil commotion, aircraft, vehicles and smoke; office equipment; comprehensive general liability, personal injury liability; glass coverage; and comprehensive commercial catastrophe liability. These policies contain their own

coverage limits, definitions and exclusions. Manifestly a common definition of coverage or limitation applicable to all policies cannot be distilled from the umbrella policy where such diverse interests and conflicting definitions are involved. Yet examination of each policy discloses that the insurable intent of each individual contract is clear.

Where no issue of fact is involved, the construction of a plain and definite contract, if needed, is a matter of law for the court. *Henderson Mill v. McConnell,* 237 Ga. 807, 809 (229 SE2d 660). A contract is not ambiguous, even though difficult to construe, unless and until an application of the pertinent rules of interpretation leaves it uncertain as to which of two or more possible meanings represents the true intention of the parties. *Village Enterprises v. Ga. R. Bank &c. Co.,* 117 Ga. App. 773 (1) (161 SE2d 901). There is no construction required or even permissible when the language employed by the parties in the contract is plain, unambiguous, and capable of only one reasonable interpretation. *Benefield v. Malone,* 112 Ga. App. 408 (145 SE2d 732). Finally, a contract of insurance couched in language chosen by the insurer is, if open to the construction contended for by the insured, to be construed most strongly, or strictly, against the insurer and liberally in favor of the contention of the insured. *Lexington Ins. Co. v. Ryder System,* 142 Ga. App. 36 (1) (234 SE2d 839).

In this case we do not view as unreasonable or unfounded the contention by Davis that his entry upon the premises of Hybrid was not an unlawful trespass without any color of right with the purpose of converting the property of Hybrid to his (Davis') own use. Rather, we agree that the evidence shows that Davis' purpose was to dispossess a tenant who was in default. However, the conversion technically arose from a deficient service of notice, and was a matter directly involved in the wrongful eviction and dispossession of the delinquent tenant. As we view the provisions of the personal injury policy of insurance, Cincinnati was obligated to defend and insure against any sums due by Davis *arising out of* a wrongful entry or eviction or other invasion of the right of Hybrid to peaceful and private occupancy. We do not impose upon

Davis the obligation of reconciling the differences of language in the various contracts. In construing an insurance policy, the test is not what the insurer intended its words to mean, but what a reasonable person in the position of the insured would understand them to mean. The policy should be read as a layman would read it and not as it might be analyzed by an insurance expert or an attorney. *Nationwide Mut. Fire Ins. Co. v. Collins,* 136 Ga. App. 671, 675 (222 SE2d 828). The language of the personal injury policy properly was determined by the trial court to be broad enough to provide coverage for the sums found by the jury to be due Hybrid because of the wrongful entry and technical conversion of the television sets at the time of the wrongful dispossession.

The purpose of the Summary Judgment Act is to eliminate the necessity for trial by a jury where, giving the opposing party the benefit of all reasonable doubts and all favorable inferences that may be drawn from the evidence, there is no genuine issue as to any material fact, and the moving party is entitled to a judgment as a matter of law. *Summer-Minter & Assoc. v. Giordano,* 231 Ga. 601, 603 (203 SE2d 173); *Holland v. Sanfax Corp.,* 106 Ga. App. 1 (126 SE2d 442). In view of the foregoing, we hold that the trial court did not err in granting summary judgment to Davis nor in denying summary judgment to Cincinnati.

*Judgment affirmed. Quillian, P. J., and Smith, J., concur.*

ARGUED NOVEMBER 20, 1979 — DECIDED FEBRUARY 4, 1980 —

*Edward L. Savell,* for appellant.
*Tyler Dixon, Oliver D. Peters, Jr.,* for appellee.