A00A0338, A00A0339. STAGL v. ASSURANCE COMPANY OF AMERICA (two cases).
(539 SE2d 173)

JOHNSON, Chief Judge.

Kevin Stagl sought to build a vacation home in Dahlonega, Georgia. In connection with the construction, he purchased a builder's risk insurance policy from Assurance Company of America.

Stagl contracted with Precision Foundations, Inc. to construct a poured wall foundation for the home. About one month after the foundation was completed, Stagl traveled from his Florida home to inspect the work. Based on his inspection and inspections done by others, he concluded that the foundation walls were built using defective materials and methods, lacked strength and durability, lacked steel reinforcement in some places, and contained a "cold joint," a defect which results from improper pouring of concrete. The walls did not fall or crumble, but Stagl halted construction of the house.

Stagl pursued an action for negligent construction against the contractor, the outcome of which is not readily apparent from the record. He also filed a claim with Assurance under his builder's risk policy, which provides coverage for a loss involving collapse of all or part of a building caused by the use of defective materials or methods in construction. Stagl claimed that the walls as constructed amounted to a "collapse" within the meaning of the policy. When Assurance refused to pay the claim, Stagl sued Assurance. Assurance moved for summary judgment, urging that the loss complained of

was not the type of loss covered by the policy.

Before the motion for summary judgment was ruled upon, Stagl filed a second action against Assurance, asserting causes of action based on breach of contract and negligence. Assurance moved for summary judgment under OCGA § 9-2-5 (a), claiming that Stagl was simultaneously prosecuting two lawsuits with the same cause of action and against the same party. After hearing arguments on both motions, the trial court granted summary judgment to Assurance as to the original case and dismissed the second action, finding that it involved matters which were alleged or could have been alleged in the original lawsuit.

In Case No. A00A0338, Stagl files a pro se appeal from the grant of summary judgment in the original case and from the order denying his motion to recuse the judge who granted summary judgment. In Case No. A00A0339, he files a pro se appeal from the dismissal of the second case. He has submitted a single four-part enumeration of error and brief for consideration in both appeals.

1. Stagl has designated four enumerations of error. In them, he alleges that the trial court erred in (1) failing to consider crucial matters in the first case; (2) not giving him proper notice of a hearing; (3) continuing to act in the first case after being presented with a recusal motion; and (4) granting summary judgment in the first case and dismissing the second case. The argument and citation of authority section of his brief, however, contains only two subsections, entitled "RECUSAL." and "SUMMARY JUDGMENT."

The rules of this court require that there be a direct and logical relationship between the enumerations of error and the arguments contained in the brief.[1] These requirements as to the form of appellate briefs were created not to present an obstacle, but to aid parties in presenting their arguments in a manner most likely to be fully comprehended by the court.[2] Despite Stagl's violation of these rules, we will exercise our discretion to consider what we believe are his main arguments, to the degree that we are able to discern them.[3]

### Case No. A00A0338

2. Stagl contends the trial court erred in granting summary judgment to Assurance when genuine issues of material fact remain regarding whether a collapse occurred as contemplated by the policy. Stagl argues that "collapse," which term is not defined in the policy,

---

[1] Court of Appeals Rule 27 (c) (1).

[2] See *Jones v. State of Ga.*, 241 Ga. App. 768, 769 (1) (527 SE2d 611) (2000).

[3] See id.; *Thomas Financial Group v. Standard Chartered Bank*, 225 Ga. App. 879-880 (1) (485 SE2d 237) (1997).

may occur where there is a reasonably detectable serious impairment of the structure's integrity. He urges that in this case there is evidence that the structural integrity of the foundation walls is impaired.

Unless otherwise defined in the contract, terms in an insurance policy are given their ordinary and customary meaning.[4] According to Webster's Third New International Dictionary, "collapse" means "1: to break down completely: fall apart in confused disorganization: crumble into insignificance or nothingness: disintegrate . . . [;] 2: to fall or shrink together abruptly and completely: fall into a jumbled or flattened mass through the force of external pressure . . . [;] 3: to cave in, fall in, or give way: undergo ruin or destruction as if by falling down." Giving the term "collapse" its usual meaning, even taking Stagl's allegations as to the condition of the foundation walls as true, it is clear that no collapse occurred.

This usual meaning of "collapse" is consistent with the policy at issue here. The policy defines "loss" as "*accidental* loss and *accidental* damage." Here, there is no evidence, nor even any allegation, that the condition complained of involved any sort of accident. Rather, the condition of the foundation walls, as it existed at the time of Stagl's inspection just after the work was done, resulted from the alleged use of defective materials and poor workmanship by the contractor unaccompanied by any accident.

Contrary to Stagl's argument, *Lipsitz v. Fireman's Fund Ins. Co. &c.*,[5] does not require a contrary result. *Lipsitz* involved the actual collapse of a roof after the accumulation of rain and ice on the roof caused it to sag and eventually cave in. *Lipsitz* basically teaches us that a condition may amount to collapse where the structure's integrity is seriously impaired and collapse is imminent, as it was in *Lipsitz*.[6] Moreover, there is no indication that the policy in *Lipsitz*, like the one here, required that a loss involve an accident.

Nor does *Nationwide &c. Ins. Co. v. Tomlin*,[7] require a finding in Stagl's favor. *Nationwide*, which was concurred in by only one judge and is physical precedent only, involved an all-risk rather than a builder's risk policy. In that case, the foundation was built on tree stumps and was beginning to sink. There was no dispute that the home was in a seriously deteriorating condition and that a collapse, as that term is traditionally defined, was inevitable. A worsening of the structure's condition had already occurred. Here, however, as of

---

[4] *Boardman Petroleum v. Federated Mut. Ins. Co.*, 269 Ga. 326, 328 (498 SE2d 492) (1998).

[5] 183 Ga. App. 270, 271 (358 SE2d 624) (1987).

[6] Id.

[7] 181 Ga. App. 413 (1) (352 SE2d 612) (1986) (physical precedent only).

the time of his deposition in April 1998, Stagl was aware of no detrimental changes in the structure's condition since its completion. And while a report submitted by Stagl's expert suggests that there are some problems with the structure, he does not indicate that the foundation walls are severely impaired or that collapse is imminent. In addition, there is nothing in the *Nationwide* opinion suggesting that the policy specified that a loss must involve an accident to be compensable.

In attempting to construe any portion of a contract, we must examine the contract as a whole.[8] In its exclusions section, the policy specifically provides that, except for previously listed covered causes (such as collapse), Assurance will not pay for loss caused by the following: any quality in the property itself that causes it to damage or destroy itself; faulty, inadequate, or defective design, workmanship, or construction; or faulty, inadequate, or defective materials used in construction. Thus, the builder's risk policy is not intended to cover losses resulting solely from poor construction. By its clear terms, this policy covers the *accidental collapse* of a structure occasioned by an underlying structural defect. Stagl's position does not realistically reflect the purpose of the builder's risk policy.

It is clear that Stagl is dissatisfied with the quality of the work done by the contractor. If Stagl has a viable cause of action at this point in time, it is against Precision Foundations, not the builder's risk insurer. Under this policy, no compensable loss has occurred. The trial court did not err in granting summary judgment to Assurance.

3. As presented, the section of Stagl's brief entitled "RECUSAL" is extremely difficult to decipher. Reading Stagl's third enumeration of error along with the argument included in this section, it appears he is arguing that the trial judge improperly based its July 9, 1999 order denying Stagl's motion to recuse on false statements as to the chronology of events, thereby attacking the truthfulness of assertions contained in Stagl's motion. Stagl does not elaborate regarding which of the judge's statements are false or show that any of the judge's statements are false. Nor does he demonstrate that the judge attacked the truthfulness of his motion. Beyond the mere allegation that the judge made false statements and thereby attacked his credibility, Stagl offers no other argument or support for his position. The burden is on Stagl as appellant to show error affirmatively by the record.[9] This he has not done, and our review of the record reveals no error.

---

[8] *Hill v. Nationwide &c. Ins. Co.*, 214 Ga. App. 715, 716 (448 SE2d 747) (1994).
[9] See generally *Kelly v. Pierce Roofing Co.*, 220 Ga. App. 391, 392 (2) (469 SE2d 469) (1996).

*Case No. A00A0339*

4. As noted in Division 1, Stagl has failed to clearly designate a section in his brief to address his abatement argument, even though it is the order granting the plea in abatement which is being appealed from in Case No. A00A0339. As best we can tell from the brief, Stagl's argument is that the motion in abatement in the second case should not have been granted because the cases involved different causes of action. We disagree.

No plaintiff may prosecute two actions at the same time for the same cause of action and against the same party.[10] If two such actions are commenced at different times, the pendency of the former is a defense to the latter.[11] Separate actions involve the same cause where the relief requested relates to substantially the same set of facts.[12] The two cases at issue involve the same parties, arise out of the same conduct, and seek relief related to substantially the same set of facts. Therefore, there was no error.[13]

*Judgments affirmed. Phipps and Mikell, JJ., concur.*

DECIDED JUNE 21, 2000 —
RECONSIDERATION DENIED JULY 11, 2000 ▮

Kevin A. Stagl, *pro se.*
*Drew, Eckl & Farnham, Clayton H. Farnham,* for appellee.

---

[10] OCGA § 9-2-5 (a).
[11] Id.
[12] *Liner v. North,* 184 Ga. App. 74-75 (2) (360 SE2d 637) (1987).
[13] See id.; see generally *Reeves Transp. Co. v. Gamble,* 126 Ga. App. 165, 167 (190 SE2d 98) (1972).
[1] OCGA § 40-5-121.