A07A1227. FIREMAN'S FUND INSURANCE COMPANY v. UNIVERSITY OF GEORGIA ATHLETIC ASSOCIATION, INC.
(654 SE2d 207)

ELLINGTON, Judge.

The Superior Court of Athens-Clarke County granted the motion for summary judgment filed by the insured, University of Georgia Athletic Association, Inc. ("the Association"), in this insurance coverage dispute. The insurer, Fireman's Fund Insurance Company, appeals, contending that it has no duty to defend because the claims at issue come within the ambit of both a "failure to effect or maintain insurance" exclusion and a "bodily injury" exclusion. For the reasons that follow, we affirm.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

(Citations and footnotes omitted.) *BBL-McCarthy, LLC v. Baldwin Paving Co.*, 285 Ga. App. 494-495 (646 SE2d 682) (2007). "An insurer's duty to defend is determined by comparing the allegations of the complaint with the provisions of the policy." (Citation and punctuation omitted.) *Nationwide Mut. Fire Ins. Co. v. City of Rome*, 268 Ga. App. 320 (2) (601 SE2d 810) (2004). Where a policy imposes a duty to defend even if the allegations are groundless, false or fraudulent, courts look to the allegations of the complaint "to determine whether a liability covered by the policy *is asserted.*" (Citations and punctuation omitted; emphasis in original.) *Penn-America Ins. Co. v. Disabled American Veterans, Inc.*, 268 Ga. 564, 565 (490 SE2d 374) (1997). Thus, an insurer is obligated to defend even where

the allegations of the complaint against the insured are ambiguous or incomplete with respect to the issue of insurance coverage. To excuse the duty to defend[,] the petition must unambiguously exclude coverage under the policy, and thus, the duty to defend exists if the claim potentially comes within the policy. Where the claim is one of potential coverage, doubt as to liability and insurer's duty to defend should be resolved in favor of the insured.

(Citations and punctuation omitted.) Id. at 565-566.
Under Georgia law,

contracts of insurance are interpreted by ordinary rules of contract construction. . . . Where the terms are clear and unambiguous, and capable of only one reasonable interpretation, the court is to look to the contract alone to ascertain the parties' intent. The contract is to be considered as a whole and each provision is to be given effect and interpreted so as to harmonize with the others.

(Citations omitted.) *Boardman Petroleum v. Federated Mut. Ins. Co.*, 269 Ga. 326, 327-328 (498 SE2d 492) (1998). "However, if a provision of an insurance contract is susceptible of two or more constructions, even when the multiple constructions are all logical and reasonable,

it is ambiguous, and the statutory rules of contract construction will be applied." (Citation omitted.) *Hurst v. Grange Mut. Cas. Co.*, 266 Ga. 712, 716 (4) (470 SE2d 659) (1996). See OCGA § 13-2-2 (rules of interpretation). When a provision of an insurance contract is ambiguous, "[t]hree well known rules" apply in the construction of the contract:

> [a]ny ambiguities in the contract are strictly construed against the insurer as drafter of the document; any exclusion from coverage sought to be invoked by the insurer is likewise strictly construed; and [the] insurance contract [is] to be read in accordance with the reasonable expectations of the insured where possible.

(Citations omitted.) *Richards v. Hanover Ins. Co.*, 250 Ga. 613, 615 (1) (299 SE2d 561) (1983).[1]

The underlying complaint filed by Decory Bryant against Hoke Wilder and the Association, which triggered the Association's claim to Fireman's Fund, alleges the following facts. In the fall of 2003, the Association employed Wilder as its Assistant Athletic Director for Standards and New Sports Programs. In that capacity, Wilder was responsible for coordinating the Association's Exceptional Student-Athlete Disability Insurance program. His duties included explaining the insurance program to eligible athletes, requesting disability insurance quotes for athletes interested in the insurance program, and submitting signed "Request to Place Coverage" forms to a designated insurance broker. The broker's receipt of a signed coverage request form would bind the coverage described in the quote, subject to termination if the broker did not receive timely payment of the premium or the required medical examination report.

That fall, junior Bryant, who played football for the University of Georgia, became eligible for the disability insurance. On Tuesday, October 21, 2003, Bryant told Wilder that he wanted the disability policy. Wilder told Bryant that the papers for him to sign would be at his locker by the end of the next day. At Wilder's request, ESIX

---

[1] See also *Prudential Ins. Co. of America v. South*, 179 Ga. 653, 655 (177 SE 499) (1934) (an insurance policy should be construed liberally to effectuate the general purpose of the contract, which is to provide the insured with coverage); *Alewine v. Horace Mann Ins. Co.*, 197 Ga. App. 479, 480 (398 SE2d 756) (1990) ("If the language is ambiguous, an insurance policy will be construed against the party preparing it and in favor of coverage.") (citation omitted); *Cincinnati Ins. Co. v. Davis*, 153 Ga. App. 291, 295 (265 SE2d 102) (1980) ("In construing an insurance policy, the test is not what the insurer intended its words to mean, but what a reasonable person in the position of the insured would understand them to mean. The policy should be read as a layman would read it and not as it might be analyzed by an insurance expert or an attorney.") (citation omitted).

Entertainment and Sports Insurance Experts solicited quotes for the coverage. On Thursday, October 23, ESIX sent an e-mail to Wilder with a quote of $5,103 from Lloyd's of London for a disability policy that would pay $500,000 in the event Bryant became permanently disabled from playing football. On Friday, October 24, Wilder mailed ESIX a letter, saying, "Let's bind coverage on Decory Bryant." Wilder did not, however, include a coverage request form signed by Bryant, as required to bind coverage.

On Saturday, October 25, Bryant suffered a serious spinal injury while playing for his team and, as a result, is disabled for life from playing any contact sports. Representatives of the Association presented Bryant with a coverage request form to sign for the first time on October 29, 2003. After receiving the form, ESIX informed Wilder that, in the absence of proof that Bryant had reviewed the quote and signed a coverage request form prior to his injury, Lloyd's of London refused to backdate the coverage to October 23.

On December 17, 2004, Bryant filed an action against Wilder and the Association asserting claims based on theories of breach of fiduciary duties, breach of contract, and negligence for damages attributable to his lack of the disability insurance he requested. Bryant seeks compensatory damages for the amount of coverage that would have been available to him had he been insured under the Lloyd's of London policy he requested, as well as punitive damages and attorney fees. The Association notified its liability carrier, Fireman's Fund, of the claim and requested defense and indemnification.

After Fireman's Fund refused to provide Wilder and the Association a defense in Bryant's action, the Association filed this third-party action, seeking a determination that Bryant's claim is covered by the Association's "Non-Profit Organization Liability Insurance Policy" issued by Fireman's Fund for the policy period of March 17, 2004 to March 17, 2005.[2] Under the policy, "Insured" is defined to

---

[2] Under Georgia law, "insureds . . . have the same opportunity as insurers to determine in advance the scope of policy provisions." *Atlantic Wood Indus. v. Argonaut Ins. Co.*, 258 Ga. 800, 801 (2) (375 SE2d 221) (1989). An insured, therefore, may file a declaratory judgment action "to settle and afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations." Id., quoting OCGA § 9-4-1. See *Edmond v. Continental Ins. Co.*, 249 Ga. App. 338, 340 (1) (a) (548 SE2d 450) (2001) (when an insured is a defendant in a pending action, the issue of whether its insurer has an obligation to defend it is an actual controversy that is appropriate for a declaratory judgment action). If an insurer communicates to the insured an unconditional and unqualified denial of coverage and refuses to defend, however, the insurer thereby fixes its rights and duties so that there remains no uncertainty for a declaratory judgment action to make certain. *Drawdy v. Direct Gen. Ins. Co.*, 277 Ga. 107, 109-110 (586 SE2d 228) (2003); *Vara v. Essex Ins. Co.*, 269 Ga. App. 417, 419 (a) (604 SE2d 260) (2004). Notice by an insurer that there is no coverage under the policy and that it would not defend immediately gives the insured the right to bring an action against the insurer to determine whether the insurer has a duty to indemnify the insured in the pending action. *Vara v. Essex*

include the Association, any director, officer, or employee of the Association and any volunteer acting with the consent of the Association. The policy provides, "Insuring Agreement: We will pay on behalf of the Insured all Loss for which the Insured shall be legally obligated to pay resulting from a Claim that is made against the Insured for a Wrongful Act, provided that the Claim is first made during the Policy Period." "Wrongful Act" is defined as "any actual or alleged negligent act, error or omission, misleading statement, or breach of duty committed by the Insured in the performance of duties on behalf of" the Association.

Among other exclusions, the policy excludes coverage for any claim "[a]lleging, based upon or attributable to, arising out of, in consequence of or in any way related to the Insured's failure to effect or maintain insurance." In addition, the policy excludes coverage for any claim "[a]lleging, based upon or attributable to, arising out of, in consequence of or in any way related to any Bodily Injury, provided, however, this exclusion shall not apply to an Employment Practices Claim for emotional distress, mental anguish or humiliation." "Bodily Injury" is defined to include "sickness, injury, disease or death of any person."

Under the policy, Fireman's Fund has the right and duty to defend the insured, "even if any of the allegations are groundless, false or fraudulent."

Fireman's Fund filed a motion to dismiss the Association's action for failure to state a claim, and the Association filed a motion for summary judgment. The trial court concluded that neither the "failure to effect or maintain insurance" exclusion nor the "bodily injury" exclusion unambiguously excluded coverage for Bryant's claim under the Association's liability policy, granted the Association's motion for summary judgment and denied Fireman's Fund's motion to dismiss.

---

*Ins. Co.*, 269 Ga. App. at 418. After an unqualified denial of coverage, the proper legal procedure to make such a determination is not instituting a new declaratory judgment action but, rather, impleading the insurer into the pending action by filing a third-party complaint pursuant to OCGA § 9-11-14. *Vara v. Essex Ins. Co.*, 269 Ga. App. at 418-420. In this case, the Association filed its "Petition for Declaratory Judgment" in the same court as Bryant filed his action against Wilder and the Association. The trial court addressed the Association's claims on the merits. Accordingly, it appears that these actions have been effectively consolidated in the lower court and that the trial court has considered the Association's petition as if it had been properly styled a third-party complaint. See *Planet Ins. Co. v. Ferrell*, 228 Ga. App. 264, 266 (491 SE2d 471) (1997) ("[P]leadings, motions and orders are to be construed according to their substance and function and not merely as to their nomenclature, being always mindful to construe such documents in a manner compatible with the best interest of justice.") (citation omitted); *Jordan v. State*, 247 Ga. App. 551, 552 (1) (544 SE2d 731) (2001) ("[T]here is no magic in mere nomenclature, and pleadings are construed to serve the best interests of the pleader, and are judged by function rather than name.") (citation and punctuation omitted). In the interest of judicial economy, we will likewise consider the Association's petition to be a third-party complaint.

1. *Fireman's Fund* contends that the term "failure to effect . . . insurance" is unambiguous and means the failure to accomplish, to produce as a result, to procure, or to place insurance. Fireman's Fund contends that Bryant's claim arises out of Wilder's and the Association's failure to procure disability insurance for Bryant after agreeing to do so. As a result, Fireman's Fund contends, coverage is barred by the failure to effect and maintain insurance exclusion. The Association contends, on the other hand, that the quoted language is ambiguous and that, construing the exclusion against Fireman's Fund as the drafter (that is, narrowly and in favor of coverage), Bryant's claim does not fall within the exclusion.

Bearing the applicable rules of contract interpretation in mind, we first consider whether, as Fireman's Fund contends, the failure to effect and maintain insurance exclusion is capable of only one reasonable interpretation and is, therefore, unambiguous. The American Heritage Dictionary,[3] defines "effect" as "[t]o bring into existence[;] [t]o produce as a result[;] [t]o bring about"; and defines "maintain" as "[t]o keep up or carry on; [to] continue[;] . . . [t]o keep in an existing state; [to] preserve or retain." Furthermore, "procure" means "[t]o get by special effort; [to] obtain or acquire[;] [t]o bring about; [to] effect." Bearing these definitions in mind, one could reasonably construe the exclusion at issue as excluding coverage where the claim is based on the defendant's failure to procure, obtain, or continue insurance, regardless of the type of insurance, the circumstances giving rise to the defendant's duty to procure, obtain, or continue insurance, or the type of damages the plaintiff claims to have sustained by the defendant's failure.[4]

---

[3] The American Heritage Dictionary of the English Language, Fourth Edition (retrieved from www.dictionary.com).

[4] See *Mgmt. Specialists v. Northfield Ins. Co.*, 117 P3d 32, 35-36 (I) (Colo. App. 2004) (A real estate property management company was sometimes required to obtain liability insurance, including directors and officers ("D&O") insurance, for homeowners associations that were its clients. The management company itself carried an errors and omissions ("E&O") liability insurance that contained an exclusion for "any damages arising out of the failure or inability to maintain adequate levels or types of insurance." The Colorado Court of Appeals found that the failure to maintain insurance exclusion referred to the management company's failure to maintain insurance of any kind, regardless of the type of insurance or whether the insurance should have been maintained for itself or for others. As a result, the Court held that the management company's E&O carrier was not required to provide a defense in the action filed by the management company's clients who alleged that the company failed to purchase D&O coverage for them or allowed coverage to lapse by failing to make premiums payments on time.) (punctuation omitted).

One could also, however, reasonably construe the exclusion in a more limited fashion. Generally, nonprofit organization liability insurance is a type of directors' and officers' ("D&O") liability insurance, with coverage extended to include, in addition to the organization's directors and officers, other employees and even volunteers of the organization.[5] Like other D&O insurance, nonprofit liability policies typically cover claims for wrongful acts by the organization or any insured person.[6] As in other D&O policies, these policies commonly include a number of exclusions "that are meant to protect the policy from being used to cover claims that are, or should be, covered under another type of policy," including an exclusion for claims based upon or attributable to any failure or omission to effect or maintain insurance. John F. Olson et al., Director & Officer Liability: Indemnification and Insurance, Dir. & Off. Liab. § 12:13 (Dec. 2006). As one commentator noted, a shareholders'

> derivative action might be brought against directors and officers alleging that they had failed to maintain adequate insurance coverage — e.g., on a major plant that was destroyed by fire. Such a claim would be excluded by [the failure to maintain insurance] clause. The intention of this exclusion is to avoid making the D&O policy a substitute for the corporation's normal liability and property insurance coverage.

Joseph F. Johnston, Jr., Corporate Indemnification and Liability Insurance for Directors and Officers, 33 Bus. Law. 1993, 2020 (1978). In this case, taking the averments of Bryant's complaint as true, the Association, acting through Wilder, voluntarily undertook to help student athletes like Bryant obtain disability insurance, by informing an eligible student about the coverage, communicating on the student's behalf with an insurance broker who would solicit quotes and place the coverage, and generally facilitating the transaction by acting as a conduit between the student and the insurance broker. We are not aware of, and Fireman's Fund has not identified, any other type of policy that a nonprofit organization would normally have which would provide coverage for this type of claim. Thus, the nonprofit organization liability policy is not being made to substitute for another kind of insurance. As a result, one could reasonably conclude that the failure to maintain insurance exclusion is limited to

---

[5] See Elaine L. Johnston et al., Nuts and Bolts of Insurance: Directors' and Officers' Liability Media Liability, SF12 American Law Institute – American Bar Association Continuing Legal Education 363, 365 (2001).

[6] Id. at 367.

the Association's failure to obtain and maintain other kinds of insurance such an organization would typically have, such as property hazard and premises liability coverage for its building.[7]

Because the failure to maintain insurance exclusion is susceptible of more than one reasonable construction, it is ambiguous under Georgia law, and we must apply the applicable rules of interpretation. *Hurst v. Grange Mut. Cas. Co.*, 266 Ga. at 716. When we construe the ambiguous exclusion against Fireman's Fund and compare the allegations of Bryant's complaint with the provisions of the policy, we conclude that Bryant's claim potentially comes within the Association's nonprofit organization liability policy.[8] As a result, the failure to maintain insurance exclusion does not justify Fireman's Fund's refusal to defend.[9] *Penn-America Ins. Co. v. Disabled American Veterans, Inc.*, 268 Ga. at 566.

2. Fireman's Fund contends that Bryant's claim against the Association is "entirely predicated on his bodily injury. In other words, 'but for' [Bryant's] bodily injury, his claim against [the Association] would have been unsustainable." As a result, Fireman's Fund contends, Bryant's claim arises out of bodily injury to him, and, therefore, the bodily injury exclusion precludes coverage under the policy. The Association contends, on the other hand, that Bryant's claim does not arise from bodily injury because he is not suing the

---

[7] In reaching the conclusion that the exclusion is not ambiguous, the dissent simply ignores the recognized purpose of the exclusion in D&O insurance policies.

[8] See *Stewart v. Boykin*, 165 Ga. App. 868 (303 SE2d 50) (1983) (physical precedent only) (Eleven days after the plaintiff applied for automobile insurance, his wife was involved in an accident. The insurer denied the plaintiff's claim for personal injury protection benefits because the insurance agent who accepted the application did not submit it to the underwriters until the day of the accident. The plaintiff sued the insurance agent for the failure to procure the requested insurance, alleging that the insurance agent misrepresented that the insurance coverage would be effective immediately and that the agent negligently failed to file the application for insurance coverage as soon as practical. This Court reversed the trial court's order granting the insurance agent's motion for summary judgment on both the fraud and the negligence claims after concluding that a jury issue existed as to whether an agency relationship existed between the plaintiff and the insurance agent and as to whether the insurance agent, if found to be the insured's agent, breached a duty of diligence to the insured.). See also Michael J. Murphy, Agents' and Brokers' Liability, 557 Practicing Law Institute/Litigation 743 (1997).

[9] See *Novak v. Ins. Administration Unlimited*, 414 NE2d 258, 259-262 (Ill. App. 1980) (An injured employee filed an action against her employer, claiming that the employer tortiously failed to inform her that the group medical expenses insurance policy, in which she was a policy holder by virtue of her employment, was no longer valid and in effect. The employer's liability insurer refused to defend, relying on an exclusion of claims "based on or attributable to any failure or omission on the part of the Insured to effect or maintain insurance." The Illinois Court of Appeals found that exclusion "would pertain solely to [the employer's] relationship with the group insurance carrier" while the employee's claim pertained to the relationship between herself and her employer. Because an insurer cannot justifiably refuse to defend unless the face of the complaint shows with absolute clarity that a particular exclusion applies, the insurer was required to defend.) (punctuation omitted).

Association for bodily injury and because his claim could exist independently of whether he was injured on October 25, 2003.

We conclude that the nexus between Bryant's bodily injury and his claims against Wilder and the Association is too attenuated to bring his claims within the ambit of the bodily injury exclusion. No conduct of the insureds is causally related to Bryant's bodily injury, in contrast to the cases cited in the dissent's "but-for" analysis.[10] For example, this is not a case in which the plaintiff claims that the insured's wrongful conduct caused or created the conditions giving rise to bodily injury to the plaintiff.[11] Because of Wilder's and the Association's wrongful conduct, on October 25, 2003, Bryant faced the hazards inherent in playing the game of football without the protection that would have been afforded by the disability insurance he requested. Wilder's and the Association's actionable breaches of fiduciary or contractual duties, and/or duty of ordinary care were complete at that time. For all the foregoing reasons, we conclude that the damages Bryant seeks for his lack of disability insurance are not damages arising from bodily injury, and are not excluded from coverage by any provision found in this insurance policy. See *Cotton States Mut. Ins. Co. v. Crosby*, 244 Ga. 456, 457-458 (1) (260 SE2d 860) (1979) (A student who was raped on school grounds and her father sued officials of the insured school system, alleging that she was unlawfully detained after the rape and not allowed to telephone her parents. The Supreme Court of Georgia held that the damages sought by the student for her unlawful detention by the defendant school officials were not damages arising from bodily injury and, therefore, were not excluded from coverage. As a result, the insurer was

---

[10] *Jefferson Ins. Co. &c. v. Dunn*, 269 Ga. 213, 215-216 (496 SE2d 696) (1998) (claims of negligent hiring and negligent supervision arose out of bar employee's intentional assault and battery of patron within meaning of exclusion for bodily injury or death caused by assault or battery where bar's exercise of care in hiring and supervising employee would have prevented the employee's tortious conduct); *Continental Cas. Co. v. H. S. I. Financial Svcs.*, 266 Ga. 260, 262 (466 SE2d 4) (1996) (claims for law partner's negligence with respect to supervising and mitigating fellow partner's embezzlement "arose out" of a dishonest, criminal act within meaning of insurance policy exclusion where adequate supervision would have ensured the proper accounting of escrowed funds).

[11] Cf. *Cotton States Mut. Ins. Co. v. Crosby*, 244 Ga. 456, 457-458 (1) (260 SE2d 860) (1979) (bodily injury exclusion precluded coverage for physical injuries resulting from a rape where the plaintiffs claimed that school officials were negligent in failing to keep the school premises safe and thus permitted conditions to exist that would allow the rape to occur); *Dynamic Cleaning Svc. v. First Financial Ins. Co.*, 208 Ga. App. 37, 38-39 (430 SE2d 33) (1993) (physical precedent only) (where a restaurant employee was stabbed by an assailant allowed inside after hours by an employee of a cleaning service and the complaint alleged that the cleaning service employee was negligent in creating the circumstances which allowed the assault to occur, the injuries which gave rise to the cause of action arose out of and were based on the assault and battery; as a result, an assault and battery exclusion in the cleaning service's liability policy precluded coverage for the restaurant employee's claims).

required to defend the action on behalf of its insured.).[12] Because the allegations of Bryant's complaint do not clearly show that his claim is beyond the policy coverage, the bodily injury exclusion does not justify Fireman's Fund's refusal to defend. *Penn-America Ins. Co. v. Disabled American Veterans, Inc.*, 268 Ga. at 566.

3. Because the Association's nonprofit organization liability policy does not unambiguously exclude coverage for Bryant's claim,[13] the policy requires Fireman's Fund to provide a defense. The trial court's order granting the Association's motion for summary judgment in this regard is accordingly affirmed.

As noted above, we resolve the issue of the duty to defend by comparing Bryant's amended complaint and the terms of the policy. We note that the issue of whether Fireman's Fund will ultimately be liable to indemnify the Association is a separate issue from the duty to defend. *Penn-America Ins. Co. v. Disabled American Veterans, Inc.*, 268 Ga. at 565 ("an insured's duty to pay and its duty to defend are separate and independent obligations") (citation and punctuation omitted). The record in this case does not contain undisputed evidence establishing as a matter of law that Bryant's damages are covered by the policy. For example, the only person alleged to have committed any negligent act, error or omission, misleading statement, or breach of duty in the performance of duties on behalf of the Association is Wilder. The record does not contain undisputed evidence that Wilder was at the relevant time a director, officer, or employee of the Association, or a volunteer acting with the consent of the Association. Any ruling on the separate issue of the duty to pay would be premature.

*Judgment affirmed. Johnson, P. J., Phipps and Adams, JJ., concur. Andrews, P. J., Blackburn, P. J., and Mikell, J., dissent.*

ANDREWS, Presiding Judge, dissenting.

The University of Georgia Athletic Association, Inc. (UGAA) filed a declaratory judgment action seeking a ruling that a liability insurance policy issued to UGAA by Fireman's Fund Insurance Company provided coverage on a claim brought against the UGAA by a former University of Georgia football player, Decory Bryant. Bryant sued the

---

[12] See also *Philadelphia Indem. Ins. Co. v. Maryland Yacht Club*, 742 A2d 79, 85-92 (I) (Md. App. 1999) (The plaintiff sued his former employer for wrongful discharge for filing a workers' compensation claim. The employer's D&O liability insurance policy excluded coverage for loss arising out of bodily injury. The Maryland Court of Special Appeals rejected the insurer's "but-for" argument that the employee's wrongful discharge suit arose out of his bodily injury claim, and held that the nexus between the bodily injury that led to the workers' compensation claim and the employee's subsequent wrongful discharge action was too attenuated to bring the wrongful discharge claim within the ambit of the bodily injury exclusion.).

[13] See Divisions 1 and 2, supra.

UGAA claiming that it breached a legal duty owed to him to procure binding coverage on a Lloyd's of London disability insurance policy for his benefit that would have provided him with $500,000 of insurance coverage as a result of a disabling bodily injury he suffered while playing football for the University. Specifically, Bryant's complaint alleged that, after he was declared eligible for the National Football League draft, he qualified for the Exceptional Student-Athlete Disability Insurance Program, which was coordinated by the UGAA. Bryant alleged that he informed the UGAA that he wanted the disability insurance; that after the UGAA obtained a premium quote on his behalf, he informed the UGAA that his parents would pay the quoted premium; and that the UGAA breached fiduciary and contractual duties and was negligent when it subsequently failed to act in a timely manner prior to his injury to submit the required "Request to Place Coverage" form to the insurance agent in order to procure a disability insurance binder for $500,000 of coverage.

Fireman's Fund refused to provide coverage or a defense on this claim on the basis of two exclusions from coverage contained in its policy. The first policy provision excluded coverage "for loss in connection with any claim . . . [a]lleging, based upon or attributable to, arising out of, in consequence of, or in any way related to any [b]odily [i]njury. . . ." The policy defines "Bodily Injury" as including "sickness, injury, disease or death of any person." The second policy provision excluded coverage "for loss in connection with any claim . . . [a]lleging, based upon or attributable to, arising out of, in consequence of or in any way related to the Insured's failure to effect or maintain insurance." Because both provisions unambiguously excluded coverage, the trial court erred by granting the UGAA's motion for summary judgment and declaring that the Fireman's Fund policy provided coverage on the claim.[14]

Insurance coverage is a matter of contract between the insurer and the insured, and this Court "will not strain to extend coverage where none was contracted or intended." (Citation omitted.) *Jefferson Ins. Co. &c. v. Dunn*, 269 Ga. 213, 216 (496 SE2d 696) (1998). Unambiguous terms excluding coverage in an insurance policy require no construction, and so long as such terms are not contrary to law, "the plain meaning of such terms must be given full effect, regardless of whether they might be beneficial to the insurer or detrimental to the insured." (Footnote omitted.) *Continental Cas. Co. v. H. S. I. Financial Svcs.*, 266 Ga. 260, 262 (466 SE2d 4) (1996).

---

[14] The trial court also erred by denying the motion by Fireman's Fund seeking dismissal of the declaratory judgment action on the basis that the claim was expressly excluded from coverage under the policy.

In determining the scope of an insurance provision excluding coverage for a claim "arising out of" certain events or causes, Georgia law recognizes the broad scope of this exclusion by applying the "but for" test traditionally used to determine cause-in-fact for tort claims. *Continental Cas. Co.*, 266 Ga. at 262; *John Crane, Inc. v. Jones*, 278 Ga. 747, 750 (604 SE2d 822) (2004). The Fireman's Fund policy unambiguously excluded coverage on claims for loss "arising out of . . . [b]odily [i]njury." *Cotton States Mut. Ins. Co. v. Crosby*, 244 Ga. 456 (260 SE2d 860) (1979) (finding a provision excluding coverage for damages arising from bodily injury to be unambiguous). Under the "but for" test, Bryant's claim against the UGAA for loss of disability insurance benefits arose out of the asserted bodily injury and was excluded from coverage, because "but for" a disabling bodily injury suffered by Bryant, there could be no claim for the benefits. *Continental Cas. Co.*, 266 Ga. at 262; *Dunn*, 269 Ga. at 216. The broad scope of this exclusion is not limited by the allegations in Bryant's complaint that the loss of insurance benefits was caused by the UGAA's negligence or its breach of fiduciary and contractual obligations in failing to obtain binding insurance coverage. Since the exclusion of coverage for claims "arising out of . . . [b]odily [i]njury" is focused solely on the genesis of those claims under the "but for" test, coverage is excluded regardless of whether the UGAA's negligence or other alleged failures were proximate causes of the claimed loss. *Continental Cas. Co.*, 266 Ga. at 262; *Dunn*, 269 Ga. at 216.

The decision in *Cotton States*, 244 Ga. 456, relied upon by the majority, does not require a different result. In that case, the school district's insurance policy excluded coverage "for any damages, direct or consequential, arising from bodily injury . . . of any person. . . ." (Punctuation omitted.) Id. The parent of a child who suffered bodily injury by being raped at school sued the school district for damages resulting from the rape alleging that school officials negligently permitted conditions to exist at the school that allowed the rape to occur. In a separate count of the complaint, the parent also sought damages based on allegations that, after the rape occurred, school officials unlawfully detained the child for a period of time. The Supreme Court held that the bodily injury exclusion excluded coverage for the claim that school officials negligently permitted the rape to occur, because the bodily injury suffered by the child gave rise to that claim and "no right of recovery would exist at all had the bodily injury not originally occurred." Id. at 457. As to the claim for unlawful detention which occurred after the rape, the Supreme Court held that "[t]he damages sought by the [child] for her unlawful detention by the defendant school officials are not damages arising from bodily injury, and are not excluded from coverage. . . ." Id. at 458. The decision does

not set forth any factual allegations regarding the unlawful detention, so there was no factual basis for the Supreme Court to conclude that the unlawful detention claim arose out of the bodily injury or that it could not have occurred "but for" the bodily injury. On the facts presented, the Supreme Court holding stands for the proposition that the unlawful detention claim did not arise out of the bodily injury because the child "could have alleged unlawful detention or have been detained regardless of the rape." *Southeastern Fire Ins. Co. v. Heard*, 626 FSupp. 476, 481, n. 13 (N.D. Ga. 1985) (construing the holding in *Cotton States*, 244 Ga. at 458).

The Fireman's Fund policy also excluded coverage "for loss in connection with any claim . . . [a]lleging, based upon or attributable to, arising out of, in consequence of or in any way related to the Insured's failure to effect or maintain insurance." Bryant's complaint against the UGAA seeking recovery for loss of the disability insurance benefits alleged that the UGAA breached a legal duty to submit the "Request to Place Coverage" form in order to "procure" the $500,000 disability insurance coverage binder for his benefit. An insurer can carry its burden of proving the applicability of a coverage exclusion by reference to the allegations in the underlying complaint against the insured, and thereby shift the burden to the insured to produce evidence creating a factual issue over whether the exclusion is applicable. *First Specialty Ins. Corp. v. Flowers*, 284 Ga. App. 543, 544 (644 SE2d 453) (2007). Fireman's Fund contends that its policy provision excluding coverage for the insured's failure to "effect" insurance unambiguously excluded coverage for loss based on Bryant's allegation that the UGAA breached a duty to "procure" binding disability insurance coverage for his benefit. In response, the UGAA argues that the exclusion is ambiguous because it is not clear whether it would apply in the context of Bryant's claim. The UGAA points out that this is not a claim that it failed to purchase or maintain insurance for itself or its employees; that the UGAA was not an insurance company, broker, or agent acting to purchase or maintain insurance for Bryant, and that under the bylaws of the National Collegiate Athletic Association, the UGAA was incapable of "effecting and maintaining" disability coverage for Bryant.

The Fireman's Fund policy excluded coverage for loss based on the UGAA's "failure to effect or maintain insurance," not a failure to "effect and maintain" insurance. At issue is whether the provision excluded coverage for the UGAA's alleged breach of a duty to "effect" insurance that would have provided Bryant with insurance benefits. Bryant does not claim that the UGAA failed to maintain or pay for disability insurance on his behalf. Rather, the allegation in his complaint was that the UGAA failed to "procure" a disability insurance binder providing coverage for him prior to his bodily injury

because it failed to submit a form showing he requested the coverage at the quoted premium.

The existence or nonexistence of an ambiguity in the insurance contract is a question of law for the courts. *Avion Systems v. Thompson*, 286 Ga. App. 847, 849-850 (650 SE2d 349) (2007). I find no ambiguity in the policy provision excluding coverage for the "failure to effect . . . insurance." The term "effect" is not defined in the insurance policy, and "[u]nless otherwise defined in the contract, terms in an insurance policy are given their ordinary and customary meaning." (Footnote omitted.) *Stagl v. Assurance Co. of America*, 245 Ga. App. 8, 10 (539 SE2d 173) (2000). The American Heritage Dictionary (3rd ed.) defines "effect" used as a verb to mean: "To bring into existence . . . [t]o produce as a result . . . [t]o bring about. . . ." The same dictionary defines the verb "procure" as used in Bryant's complaint to mean: "To get by special effort; obtain or acquire . . . [t]o bring about; effect. . . ." The policy provision excluding coverage for UGAA's "failure to effect . . . insurance" plainly excludes coverage on Bryant's claim regardless of whether the claim is characterized as the UGAA's failure to procure, effect, or obtain the disability insurance for Bryant. Moreover, nothing in the Fireman's Fund policy supports the UGAA's suggestion that the exclusion for "failure to effect . . . insurance" applies only to insurance the UGAA allegedly failed to effect for itself or its employees, but not to insurance the UGAA allegedly failed to effect for Bryant. "[A] word or phrase is ambiguous only when it is of uncertain meaning, and may be fairly understood in more ways than one . . . [so that it] involves a choice between two or more constructions of the contract." (Citation and punctuation omitted.) *Western Pacific Mut. Ins. Co. v. Davies*, 267 Ga. App. 675, 680 (601 SE2d 363) (2004). This is not an ambiguous exclusion involving a choice between two or more constructions, but simply an unqualified one which excludes coverage regardless of the type of insurance or for whom the insurance allegedly should have been effected. See *Mgmt. Specialists v. Northfield Ins. Co.*, 117 P3d 32, 36 (Colo. App. 2004) (unqualified exclusion for failure to maintain insurance included multiple situations and was not ambiguous because it did not distinguish between types of insurance or for whom it was to be maintained).

For these reasons, I respectfully dissent.

I am authorized to state that Presiding Judge Blackburn and Judge Mikell join in this dissent.

DECIDED NOVEMBER 9, 2007 — ▮▮▮▮▮▮▮▮

*Blasingame, Burch, Garrard & Ashley, Matthew A. Moseley, Thomas F. Hollingsworth III, M. Steven Heath*, for appellant.

*Thurbert E. Baker, Attorney General, G. Michael Banick, Assistant Attorney General, Forrester & Brim, Weymon H. Forrester, James E. Brim III, Carlock, Copeland, Semler & Stair, Thomas S. Carlock, Boyd B. Newton, J. Hue Henry,* for appellee.