[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 08-10686
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 10, 2008
THOMAS K. KAHN
CLERK

D.C. Docket No. 07-00682-CV-WSD-1

USMONEY SOURCE, INC., a Georgia corporation
d.b.a. Soluna First,

Plaintiff-Appellant,

versus

AMERICAN INTERNATIONAL SPECIALITY
LINES INSURANCE COMPANY, a Delaware corporation,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(July 10, 2008)**

Before CARNES, BARKETT and COX, Circuit Judges.

PER CURIAM:

The Plaintiff, USMoney Source, Inc. ("USMoney"), challenges the district

court's order granting summary judgment in favor of the Defendant, American

International Specialty Lines Insurance Company ("American"), USMoney's errors and omissions insurer. The court found that, based on a coverage exclusion in the policy, American was not obligated to defend and indemnify USMoney in an action in United States District Court for the District of Nebraska that resulted in a judgment against USMoney. USMoney appeals, argues that the exclusion does not apply, and asks that we grant its motion for summary judgment. We reverse.

## I. Background

USMoney filed a declaratory judgment action seeking indemnification from American under a Mortgage Bankers/Mortgage Brokers Errors and Omissions Policy for a judgment rendered against it in Nebraska (the "underlying action"). In the underlying action, TierOne Bank Corp. ("TierOne") sued USMoney to recover unpaid loans TierOne advanced to USMoney under a Line of Credit Agreement. USMoney used the loans to originate residential mortgages for sale on the open market. TierOne filed suit after USMoney did not repay the loans within thirty days (as required by the Line of Credit Agreement), in part because the loans were not secured by a valid and enforceable first lien on each of the subject properties.[1] TierOne alleged that USMoney breached the Line of Credit Agreement, was negligent in its

---

[1] USMoney and TierOne were victims of an elaborate mortgage fraud scheme. At least two individuals involved in the scheme have been criminally charged.

submission of funding requests, and negligently misrepresented facts in the submission of its funding requests. After a bench trial, the Nebraska district court found in favor of TierOne on all of its claims, and entered judgment against USMoney in the amount of $1,625,630.71.

After judgement was entered in the underlying action, the district court ruled on the parties' pending cross-motions for summary judgment, granting American's motion and denying USMoney's motion. The court found that the errors and omissions policy did apply, but that an exclusion for claims "arising out of defective title" relieved American of its obligation to defend and indemnify USMoney. USMoney appeals.

## II. Discussion

The errors and omissions policy covers "any Claim(s) . . . for any Wrongful Act of the Insured . . . but only if such Wrongful Act . . . occurs solely in the rendering of or failure to render Professional Services . . . ." (R.1-10, Ex. 1 at 2.) "Wrongful Act" is defined as "any actual or alleged breach of duty, neglect, error, misstatement, misleading statement or omission committed solely in the Insured's Professional Services . . . ." (*Id.* at 3.) "Professional Services" is defined as "the origination, sale, pooling and servicing of mortgage loans secured by real property." (*Id.*) The coverage exclusion at issue provides that the policy "does not apply to any

Claim . . . arising out of any defective deed or title . . . ." (*Id.* at 3-4.) The issue on appeal is whether TierOne's claims arise out of any defective deed or title within the meaning of this exclusion.

There is no shortage of Georgia cases discussing insurance policies with exclusions for claims that "arise out of" a specified circumstance. As the district court recognized, Georgia courts have essentially boiled down the "arising out of" analysis to this: "[A] claim 'arises out of' a circumstance if, without the existence of that circumstance, the claim could not exist." (R.1-21 at 10.) Stated differently, "a claim does not 'arise out of' a circumstance if, independent of that circumstance, the claim could still exist." (*Id.* at 13.)

An overview of Georgia cases involving similar policy exclusions illustrates these principles. In *Continental Casualty Co. v. H.S.I. Financial Service, Inc.*, 466 S.E.2d 4 (Ga. 1996), a lawyer, Page, was sued for fraudulent use of a client's funds. His law partners, Sevy and Henderson, were sued for negligent supervision. The firm's professional liability policy excluded coverage over claims "arising out of any dishonest, fraudulent, criminal, or malicious act[s]." *Id.* at 5. After deciding that the claim against Page clearly fell within the exclusion, the court considered whether the exclusion encompassed the negligent supervision claim against Sevy and Henderson. In holding that the claim fell within the exclusion, the court said, "[I]t is clear that

[plaintiff's] claim against Sevy and Henderson 'arose out of' Page's actions, because but for Page's actions, there could be no claim against Sevy and Henderson." *Id.* at 6. The court continued, "[T]he exclusionary clause is focused solely upon the genesis of [plaintiff's] claims—if those claims *arose out of* Page's culpable conduct, as they did, then coverage need not be provided." *Id.* Thus because there could be no negligent supervision claim against Sevy and Henderson without the excluded circumstance, i.e., dishonest and fraudulent acts by a partner, the claim against Sevy and Henderson "arose out of" the exclusion.

A case reaching the opposite result is *Fireman's Fund Insurance Co. v. University of Georgia Athletic Association, Inc.*, 654 S.E.2d 207 (Ga. Ct. App. 2007), *cert. denied*, No. 07-01227 (Ga. Mar. 10, 2008). In *Fireman's Fund*, a University of Georgia football player, Bryant, informed the University's assistant athletic director, Wilder, on October 21 that he wished to obtain school-sponsored disability insurance. Wilder spent a several days soliciting quotes and attempting to procure insurance, yet failed to do so before Bryant was paralyzed in a football game on October 25. Bryant sued Wilder and the Athletic Association for breach of fiduciary duties, breach of contract, and negligence based on the defendants' failure to procure disability insurance.

The Association's liability carrier maintained that Bryant's claims were subject to several exclusions in the University's policy, including one for claims "arising out of, in consequence of or in any way related to any Bodily Injury . . . ." *Id.* at 211. According to the carrier, Bryant's claims were "entirely predicated on his bodily injury. In other words, 'but for' Bryant's bodily injury, his claim against the Association would have been unsustainable." *Id.* at 213. The Georgia Court of Appeals disagreed and found that Bryant's claims did not fall within the exclusion. It held that "the nexus between Bryant's bodily injury and his claims against Wilder and the Association is too attenuated to bring his claims within the ambit of the bodily injury exclusion." *Id.* at 213-14. The court observed that "Wilder's and the Association's actionable breaches of fiduciary or contractual duties and/or duty of ordinary care were complete" at the moment Bryant faced the hazards of playing "football without the protection that would have been afforded by the disability insurance he requested." *Id.*

*Cotton States Mutual Insurance Co. v. Crosby*, 260 S.E.2d 860 (Ga. 1979) is also worth considering. In *Crosby*, a father sued two school district officials on behalf of his minor daughter after she was raped at school. His complaint included causes of action for negligent breach of duty to safeguard the school's premises and unlawful detention of the daughter after the rape. The school board's liability policy

6

included an exclusion "for any damages, direct or consequential, arising from bodily injury." *Id.* at 861.

The Georgia Supreme Court held that the first claim—negligent failure to safeguard the premises—fell within the exclusion, but that the unlawful detention claim did not. Speaking to the first claim, the court explained that "[i]n order for a tort action to lie, there must be an injury to the plaintiff, i.e., some initiating event which is the result of the defendant's negligence and brings that wrongful conduct to light." *Id.* The court reasoned that the daughter's rape was the initiating event, and, consequently, the exclusion applied because "no right of recovery would exist at all had the bodily injury not originally occurred." *Id.* at 862. On the other hand, the exclusion did not bar the unlawful detention claim because "[t]he damages sought by the daughter for her unlawful detention by the defendant school officials are not damages arising from bodily injury . . . ." *Id.* In other words, the plaintiff could maintain an action for unlawful detention of his daughter even in the absence of bodily injury to her.

USMoney argues that the present case is controlled by *Fireman's Fund* and the unlawful detention holding in *Crosby*. Specifically, it argues that "[a]ssuming the titles were actually vested in the purported borrowers and TierOne had valid first priority liens on the properties, TierOne would still have had valid claims against

[USMoney] based upon its negligence and breach of contract in submitting forged appraisals and fraudulent insured closing letters." (Pl.'s Initial Br. at 13.) It maintains that TierOne's damages resulted as much from the forged appraisals and lack of closing insurance as they did from the lack of valid title, because forged appraisals and lack of closing insurance renders the mortgages unmarketable. (*Id.* at 15-17.) American responds that *Continental Casualty* and the negligence holding in *Crosby* controls. According to American, "the fraudulent closing letter and forged appraisal would not have been necessary if USMoney had valid title to the property, because the borrowers could have obtained a legitimate appraisal and a legitimate closing letter. Both the letter and appraisal were needed to perpetuate a fraud that would never have existed but for the lack of valid title to the property." (Def.'s Br. at 6.) We find that both parties are partially correct and hold that American is under a duty to indemnify USMoney against two of TierOne's claims—breach of contract and negligent misrepresentation.

American must indemnify USMoney against these claims because the excluded circumstance—defective title—was not necessary to them. In other words, these claims did not "arise out of" the exclusion because TierOne could have maintained those claims against USMoney even if USMoney had obtained valid first liens securing the loans. For example, although the Nebraska district court found that

USMoney breached the Line of Credit Agreement in part because it "failed to ensure TierOne had a valid first lien on the real estate for which the loans at issue were made . . ." (R.1-17, Ex. 1 at 6), it also found that USMoney breached the Agreement by "submitt[ing] funding requests to TierOne with representations and covenants containing false and inaccurate information . . ." (*id.*). Examples of false information submitted by USMoney include the names and licensures of various closing companies or their agents. Because USMoney breached the Agreement in ways unrelated to defective title, the breach of contract claim does not "arise out of" the exclusion.

Similarly, although the court found that USMoney negligently represented that "the loans . . . were secured by valid first liens on the real estate . . ." (R.1-17, Ex. 1 at 9), it went on to list further negligent representations by USMoney (*id.*). USMoney could have made these negligent representations even with good title, and therefore, this claim does not "arise out of" defective title.

TierOne's breach of contract and negligent misrepresentation claims resemble the unlawful detention claim asserted in *Crosby* and the breach of fiduciary duty and breach of contract claims in *Fireman's Fund*. Because TierOne could maintain the same causes of action even if the titles securing the loans were unblemished, the

claims do not "arise out of" the excluded circumstance, i.e., defective title, and the exclusion does not apply.

On the other hand, TierOne's common law negligence claim does "arise out of" the excluded circumstance, and therefore, is not covered. The essence of this claim, as described by the District Court of Nebraska, is that USMoney breached its duty of care to TierOne by its "failure to secure valid first liens on the real estate in the . . . Loans while representing [USMoney] in fact secured valid first liens." (R.1-17, Ex. 1 at 11.) Unlike the breach of contract and negligent misrepresentation claims, TierOne could not have maintained the common law negligence claim against USMoney in the absence of defective title; otherwise, USMoney would not have breached its duty of care. Like the negligent supervision claim asserted in asserted in *Continental Casualty* and the negligent securing of property claim in *Crosby*, TierOne's common law negligence claim is wholly dependent on the existence of defective title. Therefore, the exclusion applies and American is under no duty to indemnify USMoney against TierOne's negligence claim.

### III. Conclusion

American is obligated to indemnify USMoney against TierOne's claims for breach of contract and negligent misrepresentation, but not its claim for common law negligence. The Nebraska court found that all of TierOne's damages are attributable

10

to both the contract claim and the negligent misrepresentation claim. Therefore, the district court's order granting summary judgment in favor of American is reversed. The court's order denying summary judgment to USMoney is reversed, and the case is remanded to the district court with instructions to grant USMoney's motion for summary judgment.

**REVERSED AND REMANDED.**