**FIRST DIVISION
PHIPPS, C. J.,
ELLINGTON, P. J., and MCMILLIAN, J.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/**

**June 9, 2014**

# In the Court of Appeals of Georgia

A14A0466. AMERICAN STRATEGIC INSURANCE CORP. v.
HELM et al.

MCMILLIAN, Judge.

This case arises out of a May 26, 2012 accident in which a motorized golf cart driven by William Helm struck and injured Tracy Self. In July 2012, Tracy and Michael Self filed suit against Helm for alleged negligence in the operation of the golf cart. In August 2012, American Strategic Insurance Corp. ("ASI") filed a declaratory judgment action, seeking a determination as to whether Helm's insurance policy provided coverage for the accident. The parties filed cross-motions for summary judgment, and after a hearing on June 4, 2013, the trial court denied ASI's motion and granted the Selfs' motion. ASI now appeals, arguing that the trial court erred in determining that Helm's policy did not exclude coverage for the accident.

We review the denial or grant of summary judgment de novo to determine whether there exists a genuine issue of material fact and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. *Johnson v. Bartley*, 321 Ga. App. 59, 59-60 (741 SE2d 275) (2013). The material facts of this case are not in dispute. At the time of the accident, Helm was driving his golf cart at the Frederick Brown Jr. Amphitheater within the master-planned community of Peachtree City, Georgia. The golf cart was a 2003 EZGO Freedom SE, designed by the manufacturer with four seats. ASI issued a homeowner's policy to Helm, effective June 2, 2011 through June 2, 2012 (the "Policy"). Thus, ASI concedes that the accident at issue occurred during this effective policy term.

The Policy first identifies the types of coverage available, including in pertinent part:

SECTION II – LIABILITY COVERAGES

A.      Coverage E – Personal Liability

If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:

2

1. Pay up to our limit of liability for the damages for which an "insured" is legally liable. . . .; and

2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. . . .

B.    Coverage F – Medical Payments To Others

We will pay the necessary medical expenses that are incurred or medically ascertained within three years from the date of an accident causing "bodily injury." . . . As to others, this coverage applies only: . . .

2. To a person off the "insured location," if the "bodily injury":

. . .

b. Is caused by the activities of an "insured"

The Policy then identifies various exclusions, including the following relevant provision, which excludes coverage for all motor vehicles, *except* motorized golf carts designed to carry up to four persons:

SECTION II – EXCLUSIONS

A. "Motor Vehicle Liability"

3

. . .

2. If Exclusion A.1 does not apply, there is still no coverage for "motor vehicle liability" unless the "motor vehicle" is:

. . .

e. A motorized golf cart that is owned by an "insured," designed to carry up to 4 persons, not built or modified after manufacture to exceed a speed of 25 miles per hour on level ground . . .

In addition, Helm's Policy included a "Georgia Special Provision Endorsement" ("Special Endorsement"), which by its terms superseded and modified certain other terms contained within the Policy, including the golf cart coverage. Thus, the Special Endorsement replaced the exclusion language in Section II (2) (e), above, with the following:

e. A motorized golf cart:

(1) Owned by an "insured";

(2) Designed to carry up to 2 persons;

(3) Designed to carry 2 golf club bags;

(4) Not built or modified after manufacture; and

4

(5) Which does not exceed a speed of 25 miles per hour on level ground;

. . .

At the trial level, ASI asserted that the Policy did not provide coverage for the accident because Helm's four-seater golf cart was excluded by the Special Endorsement as it was designed to carry more than the maximum of two persons. The Selfs, however, claimed that based on the language of the exclusion, a reasonable insured could understand the exclusion to mean that "up to 2 persons" instead imposed a *minimum* requirement that the golf cart must seat at least two people in order to be covered. In granting summary judgment in favor of the Selfs, the trial court found that the exclusion ASI attempts to rely on "does not clearly and unequivocally exclude from coverage the underlying personal injury claims the Selfs have asserted against Mr. Helm." For the reasons set forth below, we affirm.

In its sole enumeration of error, ASI argues that the trial court erred in determining that the Policy could be construed as covering the accident and granting summary judgment to the Selfs. Construction and interpretation of an insurance policy are matters of law for the court. *Landmark American Ins. Co. v. Khan*, 307 Ga. App. 609, 612 (1) (705 SE2d 707) (2011). An insurance policy is a contract and subject to the ordinary rules of contract construction, and the parties are bound by its

plain and unambiguous terms. *Hurst v. Grange Mut. Cas. Co.*, 266 Ga. 712, 716 (4) (470 SE2d 659) (1996). "However, if a provision of an insurance contract is susceptible of two or more constructions, even when the multiple constructions are all logical and reasonable, it is ambiguous, and the statutory rules of contract construction will be applied." (Citations and punctuation omitted.) *Fireman's Fund Ins. Co. v. Univ. of Ga. Athletic Assn., Inc.*, 288 Ga. App. 355, 356-357 (654 SE2d 207) (2007).

The initial issue to be resolved then is whether the language of the exclusion is plain and unambiguous or subject to two or more interpretations. Beginning with the text of the Policy as it is originally issued, the exclusion provides that there is no coverage for motor vehicle liability *unless* the motor vehicle is a golf cart that is designed to carry up to four persons. By its express terms, the Policy appears to exclude coverage for any golf carts that are designed to seat only one to three persons. When the Policy is read as modified by the Special Endorsement, the applicable exclusion provides that there is no coverage for motor vehicle liability "unless" the motor vehicle is a golf cart that is designed to carry "up to two persons." According to the Selfs, a reasonable reading of the Policy is that, although two-seater golf carts would not have been covered under the base Policy, once the Special Endorsement

6

is added, a two-seater golf cart is covered, whereas a one-person cart remains excluded.[1] And thus, the Special Endorsement, like the base policy, establishes a minimum, rather than a maximum. To support their interpretation, the Selfs point out other instances in which the phrase "up to" can be used to set a minimum, noting for example that if a job posting stated that applicants must be capable of lifting up to 40 pounds or typing up to 90 words per minutes, those applicants who are capable of lifting more or typing faster would not be excluded.

ASI argues, in turn, that it clearly meant for the exclusion to set a maximum number of persons by using the phrase "up to," also giving examples of when the phrase is used to set a maximum number.[2]    However, "the test is not what the insurer intended its words to mean, but rather what a reasonable person in the insured's position would understand them to mean." (Citation and punctuation omitted.) *Kerr-McGee Corp. v. Ga. Cas. & Sur. Co.*, 256 Ga. App. 458, 460 (568 SE2d 484) (2002); see also *Fidelity Nat. Title Ins. Co. v. Keyingham Investments,*

---

[1] This interpretation is supported by the fact that several manufacturers distribute various types of single-person golf carts.

[2] To the extent ASI raises new arguments in its reply brief, those arguments are waived and will not be considered. See *Vann v. Finley*, 313 Ga. App. 153, 154, n. 2 (721 SE2d 156) (2011).

*LLC*, 288 Ga. 312, 313 (1) (702 SE2d 851) (2010) ("it is the understanding of the average policyholder which is to be accepted as a court's guide to the meaning of words, with the help of the established rule that ambiguities and uncertainties are to be resolved against the insurance company") (citation and punctuation omitted). Moreover, "an insurer seeking to invoke a policy exclusion carries the burden of proving its applicability in a given case," with the exclusion to be strictly construed against the insurer. (Citation and punctuation omitted.) *Nationwide Mut. Fire Ins. Co. v. Kim*, 294 Ga. App. 548, 552 (1) (669 SE2d 517) (2008); see also *Ga. Farm Bureau Mut. Ins. Co. v. Meyers*, 249 Ga. App. 322, 324 (548 SE2d 67) (2001) ("The insurer, in preparing the language of its policy, has the burden of using language that is clear and precise.").

Thus, while ASI's interpretation of the Policy as excluding coverage may be reasonable, the language does not unambiguously compel this interpretation. Rather, we find that although the language at issue "appears at first blush to be plain and unambiguous," when properly examined within the context of the Policy as a whole, the exclusion is ambiguous and subject to at least two reasonable interpretations, one

8

providing coverage for the accident and one excluding coverage.[3] *Kerr-McGee Corp.*, 256 Ga. App. at 459 ("Such language . . . causes a reasonable person to be unsure of what appears at first blush to be plain and unambiguous but, upon examination under the facts of this case, is ambiguous."); see also *Meyers*, 249 Ga. App. at 324 ("Ambiguity in an insurance contract is duplicity, indistinctiveness, uncertainty of meaning of expression, and words or phrases which cause uncertainty of meaning and may be fairly construed in more than one way.").

Our finding is supported by – but by no means dependent on – the deposition testimony of ASI's director of underwriting:

> Q: All right. I'm just reading here the language. It says, There is still no coverage for motor vehicle liability unless the motor vehicle is a motorized golf cart designed to carry up to four persons. So unless it's a motorized golf cart designed to carry up to four persons, that could be read to not cover a two-seater golf cart?
>
> A: A two person? I could see that.
>
> . . .

---

[3] Our holding in this regard does not mean that the use of the phrase "up to" is always, or even often, ambiguous. However, within the context of this specific exclusion, a reasonable insured could find that the phrase, as used here, sets a minimum.

Q: . . . So e (2) where it says, Designed to carry up [to] two persons, ASI reads that as designed to carry no more than two persons –

A: Correct.

Q: – is that correct? All right. As with the – the other provision that we just talked about, there's no coverage unless the golf cart is designed to carry up to two persons under this provision. So if it was a one-seater golf cart, it would not be covered under this provision?

A: Correct.

See *Certain Underwriters at Lloyd's of London v. Rucker Constr.,* 285 Ga. App. 844, 849 (2) (648 SE2d 170) (2007) ("If this is how the insurance adjuster understood it, certainly this is what a reasonable insured could expect it to mean.").

Because the exclusion is susceptible to two reasonable interpretations and is thus ambiguous, we apply three well known rules:

> any ambiguities in the contract are strictly construed against the insurer as drafter of the document; any exclusion from coverage sought to be invoked by the insurer is likewise strictly construed; and the insurance contract is to be read in accordance with the reasonable expectations of the insured where possible.

(Citation and punctuation omitted.) *Fireman's Fund Ins. Co.,* 288 Ga. App. at 357. When applying these rules, the policy must be considered as a whole and each

10

provision is to be given effect and interpreted so as to harmonize with the others. See *ALEA London Ltd. v. Woodcock*, 286 Ga. App. 572, 576 (2) (649 SE2d 740) (2007).

When the ambiguity is resolved against ASI as the drafter and in favor of coverage, the exclusion does not apply. Accordingly, we adopt the interpretation in accordance with the insured's reasonable expectations and find that the Policy provides coverage. See *Hurst*, 266 Ga. App. at 716-717 (4); *Kerr-McGee Corp.*, 256 Ga. App. at 460 ("Policies of insurance will be liberally construed in favor of the object to be accomplished, and conditions and provisions therein will be strictly construed against the insurer, as they are issued upon printed forms, prepared by experts at the insurer's instance, in the preparation of which the insured has no voice.") (citations omitted).

*Judgment affirmed. Phipps, C. J., and Ellington, P. J., concur.*