**SECOND DIVISION**
**ANDREWS, P. J.,**
**MCFADDEN and RAY , JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**March 27, 2015**

# In the Court of Appeals of Georgia

A14A2025. PARTIN et al. v. GEORGIA FARM BUREAU
      MUTUAL INSURANCE COMPANY.

MCFADDEN, Judge.

Georgia Farm Bureau Mutual Insurance Company filed a declaratory judgment action seeking a determination of its obligations under a farm package insurance policy it had issued to Kendall Partin. The trial court granted summary judgment to Georgia Farm Bureau, concluding that the motor vehicle exclusion in the farm policy applied to preclude coverage to Partin for claims asserted against him by Allen Hamilton for injuries Hamilton's granddaughter sustained while driving a four-wheeled all terrain vehicle owned by Partin. Contrary to the trial court, we hold that a jury would be authorized to find that the vehicle was "mobile equipment" as defined by the policy; that a jury would also be authorized to find that the vehicle was a "farm

implement" as that term is used in and contemplated by the policy; and consequently that the trial court erred in granting summary judgment on the basis that the policy's motor vehicle exclusion is applicable, as a matter of law, to the claims asserted against Partin.

1. *The injury*.

On appeal from the grant or denial of summary judgment, we conduct a de novo review of the evidence to determine whether there is a genuine issue of material fact, and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. *Johnson v. Bartley*, 321 Ga. App. 59, 59-60 (741 SE2d 275) (2013).

Viewed in the light most favorable to Partin, the evidence shows that Partin owns an approximately 100-acre farm where he lives and runs his cattle business. In 2005, he bought a used Polaris Ranger all-terrain vehicle for use on the farm to "[f]eed cows, check on cows, ride fences, make sure they weren't down." Partin used the vehicle every day , and once a week, he drove it to his brother's farm either by going through the woods or by driving on a county dirt road. The vehicle was designed to be used off road and the only roads that Partin drove it on were dirt roads.

2

In June 2009, Partin's girlfriend was living with him on the farm and her daughter Chelsea often stayed with them on the weekends. Partin allowed Chelsea to drive the vehicle if she asked him for permission first. On June 11, Chelsea and Hamilton's granddaughter, who were both 14 years old at the time, asked Partin if they could ride the vehicle, but he told them "no" because he was not going to be at home. He put the keys to the vehicle in a kitchen drawer before leaving for the store. The girls apparently found the keys and took the vehicle out, taking turns driving it. While Hamilton's granddaughter was driving the vehicle around a curve on a dirt road, she hit a pile of dirt, lost control, and was thrown out. As a result, she suffered severe injuries to both feet.

2. *The claim and the denial of that claim.*

Hamilton, individually and on behalf of his granddaughter, filed a negligence action against Partin and his girlfriend for allowing Hamilton's granddaughter to operate the vehicle without Hamilton's permission, without a license, and without providing adequate training or supervision. General Casualty was a party to the action as Hamilton's personal auto insurer. Demand was made upon Georgia Farm Bureau to defend the lawsuit against Partin and to pay damages sought by Hamilton and his

granddaughter. Georgia Farm Bureau responded with a declaratory judgment action, followed by a motion for summary judgment.

The trial court determined that, under the terms of the farm policy, the vehicle is a "motor vehicle," but is not "mobile equipment." The court also determined that the vehicle was not a "farm implement, as that term is used in the policy." As a result, the court ruled that the policy's "motor vehicle" exclusion applied to exclude coverage for the accident and granted Georgia Farm Bureau's motion for summary judgment. Partin, Hamilton and General Casualty appeal collectively.

3. *The farm policy, generally.*

Partin was the named insured on the farm policy, which was effective on the date of the accident and provided coverage for bodily injury and property damage as follows:

1. **Insuring Agreement**[1]

a. We will pay those sums that the **insured** becomes legally obligated to pay as **damages** because of **bodily injury** or **property damage** to which this insurance applies. We will have the right and duty to provide defense of any suit seeking those **damages**. However, we have no duty

---

[1]Emphasis in the original; defined terms are in boldface.

4

to defend **suits** for **bodily injury** or **property damage** not covered by this Coverage Form. . . .

b. This insurance applies to **bodily injury** or **property damage** only if: (1) The **bodily injury** or **property damage** is caused by an **occurrence**; and (2) The **bodily injury** or **property damage** occurs during the policy period.

The farm policy defines an "occurrence" as "an accident . . . which results in **bodily injury** or **property damage** neither expected nor intended from the standpoint of the **insured**." It is undisputed that the subject injury was caused by an "occurrence" as defined in the policy and that the injury occurred during the policy period.

But Georgia Farm Bureau contends that the injury is not covered because of policy exclusion e.(1), which excludes from coverage: "**Bodily injury** or **property damage** arising out of the ownership, maintenance, use or entrustment to others of any aircraft, **motor vehicle**, motorized bicycle or tricycle owned or operated by or rented or loaned to any insured." This exclusion does not apply to a "**farm** implement while upon public roads."

"Motor vehicle" is defined, in relevant part, to include a "motorized land vehicle, trailer or semi-trailer: (a) Designed for travel on public roads; or (b) Used on

public roads; unless it qualifies as **mobile equipment**." "Motor vehicle" and "mobile equipment," as defined in the policy, are mutually exclusive.

"Mobile equipment" is defined to mean

the following, including any attached machinery or equipment. Bulldozers, forklifts, tractors, and other farm machinery designed for use: (1) Principally off public roads; and (2) As implements for cultivating or harvesting."

a. Vehicles while used on **insured location** you own or rent, and not used for **business** purposes;

b. Vehicles, whether self-propelled or not, on which are permanently mounted: (1) Power cranes, shovels, loaders, diggers or drills; or (2) Road construction or resurfacing equipment scrapers or rollers; . . .

d. Vehicles not described in a. or b. above that are maintained primarily for purposes other than the transportation of persons or cargo . . . .

4. *The farm policy,"mobile equipment" and "farm implement" exceptions*.

The dispositive questions, therefore, are whether the vehicle qualifies under the terms of the policy as "mobile equipment" (and therefore not as a "motor vehicle") or as a "farm implement." Partin contends, and we agree, that the trial court erred by concluding, as a matter of law, that the vehicle was not "mobile equipment" as

6

defined in the farm policy or a "farm implement," as used (but not defined) in the policy and therefore that the "mobile equipment" and "farm implement" exceptions to the policy's motor vehicle exclusion are inapplicable.

Those questions are questions of contract construction.

> Construction and interpretation of an insurance policy are matters of law for the court. An insurance policy is a contract and subject to the ordinary rules of contract construction, and the parties are bound by its plain and unambiguous terms. However, if a provision of an insurance contract is susceptible of two or more constructions, even when the multiple constructions are all logical and reasonable, it is ambiguous, and the statutory rules of contract construction will be applied.

*American Strategic Ins. Corp. v. Helm*, 327 Ga. App. 482, 485 (759 SE2d 563) (2014) (citations and punctuation omitted).

The rules of construction require the court to consider the policy as a whole, to give effect to each provision, and to interpret each provision to harmonize with each other. Id at 487. In addition, "any ambiguities in the contract are strictly construed against the insurer as drafter of the document; any exclusion from coverage sought to be invoked by the insurer is likewise strictly construed; and the insurance

contract is to be read in accordance with the reasonable expectations of the insured where possible." Id. (citations and punctuation omitted).

(a) *Mobile equipment*.

Partin contends that the vehicle falls within the definition of "mobile equipment" because it is "other farm machinery" designed for use principally off public roads and as an implement for cultivating or harvesting. The policy lists bulldozers, forklifts and tractors as mobile equipment, but does not define "other farm machinery." Partin testified that the vehicle was designed for off-road use and that he used it to work his farm. It is true that there is also evidence that the vehicle was used on public dirt roads for non-farming purposes, but that does not necessarily exclude it from qualifying as "mobile equipment" because the language of the policy leaves open the possibility that "mobile equipment" will be used on public roads to some extent.

The trial court determined that the vehicle was not "mobile equipment" because it did not have a specialized or primary purpose other than the transportation of persons or cargo, as set forth in subparagraph (d.) of the "mobile equipment" definition. But the requirement of a specialized or primary purpose other than transportation is at best implicit in the policy language, and ambiguities in an

8

insurance policy must be "strictly construed against the insurer as drafter of the document." *American Strategic Ins. Corp. v. Helm*, 327 Ga. App. at 487. In addition, the trial court's interpretation ignores other language from the same definition, and an insurance policy should not be construed in a manner that would render any of its provisions meaningless. *VATACS Group, Inc. v. Homeside Lending*, 276 Ga. App. 386, 389 (1) (623 SE2d 534) (2005).

No party cites to any legal authority construing a similar definition of "mobile equipment" in this context and there does not appear to be any relevant Georgia authority. We conclude that the policy's definition of "mobile equipment" could be reasonably construed to include the vehicle at issue. Considering the policy as a whole and construing the ambiguity against the insurer, the trial court erred by concluding that the policy could not be so construed. Accordingly, the trial court erred in granting summary judgment to Georgia Farm Bureau on the issue of whether Partin's vehicle falls within the policy's definition of "mobile equipment."

(b) *Farm implement*.

Partin also contends that the vehicle qualifies under the "farm implement" exception to the motor vehicle exclusion, which states that the motor vehicle

exclusion does not apply to a "farm implement while upon public roads." The term "farm implement" is not defined in the policy.

"Unless otherwise defined in the contract, terms in an insurance policy are given their ordinary and customary meaning." *Stagl v. Assurance Co. of America*, 245 Ga. App. 8, 10 (2) (539 SE2d 173) (2000) (citation omitted). According to Merriam-Webster's online dictionary, "implement" means "a device used in the performance of a task." Giving that term its usual meaning, it is not clear that the vehicle, a device that Partin purchased and used for working on his farm, cannot be considered a "farm implement" under the policy.

There does not appear to be any relevant Georgia authority defining this term. Georgia Farm Bureau relies on *O'Quinn v. Wedlock*, 428 S2d 873 (La. Ct. App. 1983), to support its argument that the vehicle does not qualify as a farm implement. The court in *O'Quinn* considered whether a three-wheeled all terrain vehicle could be considered a farm implement and determined that it could not, reasoning that no self-propelled motor vehicle could be considered an "implement" in the usual sense of the word. Id. at 874. But other courts have determined that self-propelled motor vehicles may be considered farm implements. In *Heitkamp v. Milbank Mut. Ins.*, 383 NW2d 834 (N. D. 1986), the court held that whether a pickup truck that was

10

purchased and owned for use on a family farm and also used for non-farm purposes qualified as a "farm implement" was an issue properly submitted to the jury. Id. at 837; see also *Garrett v. Alfa Mut. Ins.*, 584 S2d 1327 (Ala. 1991) (jury issue presented as to whether Ford Bronco, which was primarily used to perform farm-related tasks, was a farm implement).

We conclude that the policy could be reasonably construed to find that the vehicle is a "farm implement." Considering the policy as a whole and construing the ambiguity against the insurer, the trial court erred by concluding that the policy could not be so construed. Accordingly, the trial court erred in granting summary judgment to Georgia Farm Bureau on the issue of whether Partin's vehicle falls within the "farm implement" category.

Given our determination that the trial court erred in granting summary judgment to Georgia Farm Bureau on these issues, we need not address the remaining issues raised by Partin.

*Judgment reversed. Andrews, P. J., and Ray, J., concur judgment only.*