NOT FOR PUBLICATION

In the

United States Court of Appeals

For the Eleventh Circuit

————————————————

No. 24-11121

————————————————

TRANSWORLD FOOD SERVICE, LLC,
a.k.a. TransWorld Foods,
EMILIA FOODS, LLC,

                                                    *Plaintiffs-Appellants,*

*versus*

NATIONWIDE MUTUAL INSURANCE
COMPANY,

                                                    *Defendant-Appellee.*

————————————————

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:19-cv-03772-SDG

————————————————

Before WILLIAM PRYOR, Chief Judge, LUCK, and BRASHER, Circuit
Judges.

PER CURIAM:

Transworld Food Service, LLC[1] sued its insurance company, Nationwide Mutual Insurance Co., for breach of the insurance policy and bad faith because, Transworld alleged, Nationwide refused to pay for covered losses Transworld suffered in 2016, 2017, and 2018. The district court granted summary judgment for Nationwide because: (1) Transworld did not bring its legal action based on the 2016 loss until more than one year after the tolling period ended, in violation of the policy's one-year time bar; (2) Transworld did not promptly notify Nationwide about the 2017 loss, in violation of the policy's prompt notice provision; (3) Transworld was not entitled to lost business income for the 2018 loss because the company did not completely suspend operations; and (4) Nationwide did not act in bad faith by properly denying Transworld's claims. After careful review, we affirm.

## FACTUAL BACKGROUND

### *Transworld and its Insurance Policy with Nationwide*

Transworld operated a food supplier business for restaurants in the Atlanta area. Two parts of its operations are important for this appeal. First, the company leased a warehouse. Inside the warehouse was a freezer and coolers where it kept the food. The

---

[1] Transworld is really made up of two companies—Transworld and Emilia Foods, LLC. The parties agree that, for purposes of this case, there's been no meaningful distinction between the two businesses since Transworld purchased Emilia in August 2015. So, for ease of reference, we will call both companies by the parent, Transworld.

freezer and coolers were powered by a refrigeration system made up of condensers, coils, and compressors.

Second, Transworld bought an insurance policy from Nationwide.[2] The policy covered damage to Transworld's warehouse, equipment, and food. And the policy covered any lost business income caused by damage to the company's property. Nationwide agreed to "pay for the actual loss of 'business income' [Transworld] sustain[ed] due to the necessary suspension of [Transworld's] 'operations' during the 'period of restoration.'" The policy covered lost business income for up to twelve months. After the twelve months, "[i]f the necessary suspension of [Transworld's] 'operations' produce[d] a 'business income' loss payable under [the] policy," Nationwide would provide extended business income coverage from the date the "property . . . [was] actually repaired, rebuilt or replaced and 'operations' [were] resumed" to when operations were "restore[d]" to what they would have been if "no . . . loss or damage had occurred" (or sixty days, whichever happened first).

In the event of loss or damage, Transworld had to give Nationwide "prompt notice" with "a description of the property

_____

[2] Transworld actually had three policies with Nationwide. One provided coverage from September 6, 2015 to September 6, 2016. Another provided coverage from September 6, 2016 to September 6, 2017. And a third provided coverage from September 6, 2017 to September 6, 2018. Because the essential provisions were the same in the three policies, for ease of reference, we will refer to them together as the policy or the insurance policy.

involved."  And Transworld was required, "[a]s soon as possible, [to] give [Nationwide] a description of how, when and where the loss or damaged occurred."  If there was a dispute about what was owed, Transworld could "not bring a legal action" unless "[t]here ha[d] been full compliance with all of the terms" of the policy and "[t]he action [was] brought within [one] year after the date on which the direct physical loss or damage occurred."

Transworld claimed losses to its equipment and food in 2016, 2017, and 2018.

### The 2016 Loss

On January 17, 2016, the fire-water main outside Transworld's warehouse failed during the installation of a back-flow preventer, leading the warehouse to flood.  The flood caused the insulated walls of the coolers and freezer to crack and damaged office furniture, food, phones, cameras, and computer servers.

The next day, Transworld notified Nationwide about the flood.  Nationwide's adjuster inspected the warehouse and made partial payments on June 21, September 29, November 23, and December 20, 2016.  The payments covered damage to the coolers, the freezer, Transworld's other property, and lost business income.  More than two years after the flood, on March 22, 2018, Nationwide made a final payment to Transworld for the 2016 loss.

### The 2017 Loss

On July 10, 2017, roofers working for Transworld's landlord cut the freon supply line to the freezer compressor.  This caused

the temperature in the freezer to rise, spoiling the food inside. The compressor also needed to be repaired, which took days to fix and bring the freezer down to the proper temperature.

Before notifying Nationwide about the cut in the freon line, Transworld first reached out to the roofer's insurance company and made a claim for the spoiled food, equipment and property damage, lost business income, and accounting and attorney fees. The roofer's insurance company made payments to Transworld to cover the food and repairs, with a final payment made on November 1, 2017, but it didn't pay for anything else.

So, the next day, on November 2, 2017—three months and twenty-three days after the freon supply line was cut—Transworld reported the 2017 loss to Nationwide. In response, Nationwide hired a forensic accountant, investigated the claim, and paid Transworld to replace the compressor. But it didn't pay for lost business income.

### The 2018 Loss

On July 22, 2018, the unit next to Transworld's warehouse sprung a water leak. The leak, Transworld said, ruined the food in its freezer. It first notified the landlord's insurance company about the spoiled food, but the claim was denied. After the denial, Transworld turned to Nationwide. It sought coverage for the spoiled food and lost business income. The claim based on the 2018 loss was still pending when Transworld brought this lawsuit.

## PROCEDURAL HISTORY

On July 22, 2019, Transworld sued Nationwide for breaching the insurance policy by not paying what Transworld was owed for the 2016, 2017, and 2018 losses, and for bad faith. Transworld sought payment for: equipment damage and lost business income for the 2016 loss; equipment damage and lost business income for the 2017 loss; and lost business income for the 2018 loss.[3]

After discovery, Nationwide moved for summary judgment, which the district court granted. The district court granted summary judgment for Nationwide on the breach of insurance policy claim based on the 2016 loss because the policy required Transworld to bring its lawsuit within one year of the loss, but Transworld didn't file suit until three-and-a-half years after the warehouse flood. While there was a genuine dispute of fact about whether Nationwide waived the one-year time bar by working with Transworld to resolve the claim, under Georgia law, the waiver merely tolled the one-year time bar during the negotiations.[4] When Nationwide made its final payment on March 22, 2018, the tolling period ended and Transworld had one year to bring its lawsuit under the policy. Because Transworld did not file

---

[3] There were other claims that went to trial or were resolved by stipulation, but they are not relevant to this appeal.

[4] Everyone agrees that the policy is governed by Georgia law. So do we. *See Ins. Co. of N. Am. v. Lexow*, 937 F.2d 569, 571 (11th Cir. 1991).

24-11121                Opinion of the Court                              7

its lawsuit until a year-and-a-half later, the breach of insurance policy claim based on the 2016 loss exceeded the time bar.

As to the breach of insurance policy claim based on the 2017 loss, the district court granted summary judgment for Nationwide because Transworld did not notify the insurance company about the cut freon line until almost four months after it happened, in violation of the policy's prompt notice provision. Four months (minus a few days) was not prompt under Georgia law. And Transworld's excuse for waiting almost four months—that it first reported the loss to the roofer's insurer and it was waiting to hear back before reaching out to Nationwide—was not a valid justification.

As to the breach of insurance policy claim based on the 2018 loss, the district court granted summary judgment for Nationwide because Transworld was entitled to lost business income under the policy only if it completely suspended operations. Because Transworld continued operating despite the water leak from the warehouse next door, Transworld was not entitled to lost business income damages. Finally, because the district court granted summary judgment for Nationwide on the breach of insurance policy claims, it was also entitled to summary judgment on the bad faith claims.

Transworld appeals the summary judgment for Nationwide.

## STANDARD OF REVIEW

We review a district court's summary judgment de novo. *Wadley Crushed Stone Co., LLC v. Positive Step, Inc.*, 34 F.4th 1251, 1256 (11th Cir. 2022).

## DISCUSSION

We split our discussion in four parts. In the first three parts, we consider the summary judgment for Nationwide on Transworld's breach of insurance policy claims for each of the three losses. And in the last part, we briefly address the summary judgment for Nationwide on Transworld's bad faith claims.

*The Breach of Insurance Policy Claim Based on the 2016 Loss*

The district court granted summary judgment for Nationwide on the breach of insurance policy claim based on the 2016 loss because Transworld did not bring its "legal action" against Nationwide "within [one] year after the date on which the direct physical loss or damage occurred." Georgia recognizes and enforces contractual limitation periods like the one-year time bar in Transworld's insurance policy. *See Thornton v. Ga. Farm Burau Mut. Ins. Co.*, 695 S.E.2d 642, 643 (Ga. 2010).

But an insurance company can waive the contractual limitation period "where the company leads the insured by its actions to rely on its promise to pay, express or implied." *Auto-Owners Ins. Co. v. Ogden*, 569 S.E.2d 833, 835 (Ga. 2002) (internal quotation and footnote omitted). Where that happens, the waiver "merely toll[s] the time for filing the action rather than waiving entirely the

24-11121              Opinion of the Court              9

contractual requirements as to the time of filing the suit." *Looney v. Ga. Farm Bureau Mut. Ins. Co.*, 233 S.E.2d 248, 249 (Ga. Ct. App. 1977).

*Looney* demonstrates how the tolling works in Georgia. In that case, the plaintiff suffered storm damage in June 1971, but did not bring his lawsuit until May 1975. *Id.* at 248. Even though the plaintiff's insurance policy had a one-year time bar for bringing a lawsuit, the insurance company had been working with the plaintiff to resolve the claim until March 1974. *Id.* That month, the insurance company stopped negotiating with the plaintiff and sent a denial letter. *Id.* The Georgia appellate court held that, even if the insurance company waived the time bar by working with the plaintiff to resolve the claim, "the tolling ceased upon the denial of liability," and, at that point, "the limitations period began to run." *Id.* at 249.

Like the insured in *Looney*, Transworld's insurance policy required Transworld to bring any lawsuit against Nationwide within one year after the date of loss. Yet there's no dispute that it didn't. Transworld filed this lawsuit on July 22, 2019—more than three years after the January 2016 loss.

And like the insurer in *Looney*, the summary judgment evidence showed that Nationwide waived the one-year time bar by working with Transworld to resolve the 2016 loss. Nationwide sent an adjuster to evaluate the damage to the warehouse and made five partial payments in the months and years after the loss.

The question here, as in *Looney*, is the effect of the waiver. Transworld argues that, where an insurance company waives the one-year time bar, the waiver is permanent and cannot be undone. Nationwide, on the other hand, contends that the waiver merely tolls the contractual limitation period, and the tolling period ends when the negotiations stop and the insurance company makes a final decision about the claim.

*Looney* answers the question by siding with Nationwide. Its waiver, by adjusting the 2016 loss and partially paying, "merely toll[ed] the time for filing the action rather than waiving entirely the contractual requirements as to the time of filing the suit." *See id.* "[T]he tolling ceased upon the denial of liability," and, from then on, "the limitations period began to run." *See id.*

Applied here, Nationwide denied liability on March 22, 2018 when it made the final payment on the 2016 loss. At that point, Nationwide stopped working on the 2016 loss and the tolling ended on the one-year time bar. Transworld had until March 2019 to bring its lawsuit. Yet it waited more than a year, filing on July 22, 2019. As in *Looney*, Transworld's breach of insurance policy claim based on the 2016 loss was barred by the one-year time bar.

In response, Transworld asserts that *Looney* is an outlier because the Georgia courts view the waiver of a contractual limitation period as a permanent waiver. But the decisions Transworld points to address a different issue—whether the insurance company, in fact, waived the contractual limitation period. *See Ogden*, 569 S.E.2d at 835 (finding a dispute of fact as to whether the

insurance company waived the one-year requirement); *Balboa Life and Cas., LLC v. Home Builders Fin., Inc.*, 697 S.E.2d 240, 244 (Ga. Ct. App. 2010) (same); *Ga. Farm Bureau Mut. Ins. Co. v. Mikell*, 191 S.E.2d 557, 559 (Ga. Ct. App. 1972) (same); *Shelter Am. Corp. v. Ga. Farm Bureau Mut. Ins. Co.*, 433 S.E.2d 140, 142 (Ga. Ct. App. 1993) (dismissing the argument that the tolling of a one-year requirement can happen before the start of negotiations in holding that an insurance company did not waive the provision); *Universal Sci., Inc. v. Safeco Ins. Co. of Am.*, 331 S.E.2d 611, 615 (Ga. Ct. App. 1985) (finding an insurance company did not waive the one-year requirement because negotiations only took place within the one-year period). None of the decisions Transworld cites consider the issue we have in this case—where the summary judgment evidence shows that the insurance company waived the contractual limitation period, what is the legal effect of the waiver.

These other decisions do not resolve that issue, but *Looney* does. It holds that the effect of a waiver is to toll the one-year time bar until negotiations on the claim end and the insurance company makes a final decision on the claim. 233 S.E.2d at 249. At that moment, the one-year clock begins to tick.[5]

---

[5] Transworld raises one other issue for the first time in its reply brief. It contends that, even if the legal effect of Nationwide's waiver under Georgia law was to toll the one-year time bar, the summary judgment evidence showed that Nationwide was still investigating the 2016 loss after the final payment was made on March 22, 2018. But, as we've repeatedly held, contentions raised for the first time in the party's reply brief "come too late." *See e.g.*,

Because Transworld did not file suit within one year of Nationwide's final payment on the 2016 loss, the district court did not err in granting summary judgment for Nationwide on this claim.

*The Breach of Insurance Policy Claim Based on the 2017 Loss*

The district court granted summary judgment for Nationwide on the breach of insurance policy claim based on the 2017 loss because Transworld did not give Nationwide "prompt notice" of the 2017 "loss or damage." Under Georgia law, insurance policies may contain a duty to give notice as a condition precedent to coverage. *Plantation Pipe Line Co. v. Stonewall Ins. Co.*, 780 S.E.2d 501, 509–511 (Ga. Ct. App. 2015). A notice provision that sets a condition precedent to coverage "must be complied with, absent a showing of justification." *Id.* at 509 (internal quotation and citation omitted). If "an insured has not demonstrated justification for failure to give notice according to the terms of the policy, then the insurer is not obligated to provide either a defense or coverage." *Id.* (internal quotation and citation omitted).

Transworld's insurance policy had a "prompt notice" provision that was a condition precedent to coverage. Yet Transworld did not notify Nationwide about the 2017 loss until almost four months after the freon line had been cut.

Transworld argues that it was justified in waiting because the company initially submitted a claim to the roofer's insurance

---

*Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 683 (11th Cir. 2014). Thus, Transworld has forfeited this issue. *Id.* at 682.

company.  Only when Transworld heard back that the roofer's in-surer would not cover the full scale of Transworld's damages did Transworld notify Nationwide about the 2017 loss.

The Georgia courts have found that a similar excuse was not justification for delaying notice of a claim to an insurance company. *Lankford v. State Farm Mut. Auto. Ins. Co.*, 703 S.E.2d 436, 438–40 (Ga. Ct. App. 2010).  In *Lankford*, for example, the plaintiff was in a car accident.  *Id.* at 438.  The plaintiff (through his employer) made a claim on the other driver's policy.  *Id.*  The driver's policy covered the damage to the plaintiff's car, but it did not cover the injuries the plaintiff suffered from the accident.  *Id.*  Almost two years after the accident, the plaintiff served notice under his policy that he had been injured in the accident.  *Id.*  The plaintiff's insurance company denied coverage because it had not received timely notice.  *Id.*  After the plaintiff sued, the trial court granted summary judgment for the insurance company because the plaintiff "failed to give the requisite notice and" he "failed to present any facts to justify this delay."  *Id.*

The Georgia appellate court affirmed, agreeing with the trial court that waiting to be paid under the driver's policy was not justification for delaying notice.  *Id.* at 439.  The plaintiff's insurance policy, the court explained, required notice "as soon as reasonably possible" and not "after the point that [the driver's] coverage was exhausted or that [the plaintiff] became concerned that his losses might exceed [the driver's] policy limits."  *Id.*  "To hold otherwise," the court continued, "would allow [the plaintiff] to delay notifying

the insurer for months or even years, so long as the [the plaintiff] thought that other insurance existed to cover the loss." *Id.* (quotation omitted). That interpretation would be "contrary to the obvious intent of the policy, which is to require notice within a reasonable period after the occurrence of a covered event." *Id.* (quotation and brackets omitted).

Transworld's failure to notify Nationwide about the 2017 loss while trying to recover from the roofer's insurance company was not a justification for the delay under Georgia law. And Transworld has not provided any other justification for its delay.

Even without justification for the delay, Transworld alternatively contends that the promptness of its four-month delay in notifying Nationwide about the 2017 loss is a question of fact for the jury. But an unjustified four-month delay is not prompt notice as a matter of law in Georgia. *Bituminous Cas. Corp. v. J.B. Forrest & Sons, Inc.*, 209 S.E.2d 6, 8–9 (Ga. Ct. App. 1974).

*Bituminous Casualty* explains why. There, the policy required the plaintiff to notify his insurer of any loss or damage "as soon as practicable." *Id.* at 8. But after an accident occurred on February 23, 1973, the plaintiff did not notify his insurance company until about June 19. *Id.* The Georgia appellate court concluded that, without justification for the delay, notice given a few days short of four months was not "reasonable promptness" as a matter of law. *Id.* at 9. Waiting nearly four months without justification, the court explained, was unreasonable because evidence

and witnesses "have a way of disappearing and simply becoming unavailable with the passage of time." *Id.*

Just as the plaintiff in *Bituminous Casualty* did, Transworld waited four months, minus a few days, after the freon supply line was cut before notifying Nationwide about the 2017 loss. Because Transworld did not have a justification for the delay, the notice to Nationwide was not prompt as a matter of law.

Transworld offers two arguments in response. First, citing *Rucker v. Allstate Insurance Co.*, 390 S.E.2d 642 (Ga. Ct. App. 1990) and *Progressive Mountain Insurance Co. v. Bishop*, 790 S.E.2d 91 (Ga. Ct. App. 2016), it contends that the Georgia courts have held that a one-year delay is not unreasonable as a matter of law. But, in *Rucker* and *Bishop*, the Georgia appellate court held that issues of fact existed as to whether the plaintiffs' one-year delays in notifying their insurance companies were justified. *Rucker*, 390 S.E.2d at 643–44; *Bishop*, 790 S.E.2d at 95. Here, as we've already explained, Transworld was not justified in delaying notice to Nationwide. Because this case involves an unjustified delay, and *Rucker* and *Bishop* involved potentially justified delays, they are unhelpful to Transworld.

Second, Transworld asserts that the notice provisions in the policies in *Lankford* and *Bituminous Casualty* were different. They required the plaintiffs to notify their insurance companies of loss "as soon as reasonably possible" and "as soon as practicable." *See Lankford*, 703 S.E.2d at 438; *Bituminous Casualty*, 209 S.E.2d at 8. Transworld's insurance policy, on the other hand, required

"prompt" notice. The difference in language, Transworld contends, mattered to whether its four-month delay in notifying Nationwide was too long as a matter of law.

But the Georgia appellate court has rejected this argument. In *Bishop*, the court explained that it was "appropriate to rely on [its] precedent construing provisions that require notice be given 'as soon as practicable' or similar language" in "case[s] involving a provision requiring that notice be given 'promptly.' The word 'promptly' essentially means to do something as soon as possible." *Bishop*, 790 S.E.2d at 95 n.4; *see also Silva v. Liberty Mut. Fire Ins. Co.*, 808 S.E.2d 886, 889 (Ga. Ct. App. 2017) (concluding that the insured's duty to notify the insurance company "promptly" was "[s]imilar to the language" in the policy in *Lankford*, 703 S.E.2d 436, requiring notice "as soon as reasonably possible"). So, there's no material difference between the notice provisions in *Lankford* or *Bituminous Casualty* and the prompt notice provision here.[6]

Because Transworld did not have a justification for delaying notice to Nationwide about the 2017 loss, and because a four-month unjustified delay is unreasonable as a matter of law in Georgia, the district court did not err in granting summary judgment for Nationwide on the breach of insurance policy claim based on the 2017 loss.

---

[6] Transworld raises one other point. For the first time in its reply brief, Transworld contends that Nationwide waived the notice provision by making a partial payment on the 2017 loss. But, again, this contention "come[s] too late." *See e.g.*, *Sapuppo*, 739 F.3d at 683.

*The Breach of Insurance Policy Claim Based on the 2018 Loss*

The district court granted summary judgment for Nationwide on Transworld's breach of insurance policy claim based on the 2018 loss because Transworld was not entitled to lost business income under the policy. To be entitled to lost business income, the district court explained, the insurance policy required Transworld to suspend operations completely. Because Transworld continued to operate despite the 2018 water leak, Nationwide properly denied coverage.

Transworld's insurance policy covered "loss of 'business income' [Transworld] sustain[ed] due to the necessary suspension of [Transworld's] 'operations' during the 'period of restoration.'" Transworld argues that the district court misinterpreted the insurance policy. "Suspension" of operations, the company contends, does not mean that it had to cease operations. Partial suspensions are also covered, it says. Nationwide, in contrast, contends that "suspension" means Transworld had to cease operations.

We consider the same question the district court did—whether "suspension" of operations under the policy required a complete cessation of operations or a partial shutdown. For three reasons, we agree with the district court that "suspension" of operations means a complete, rather than a partial, shutdown.

First, because the term "suspension" is "undefined in the insurance policy, we look to dictionaries to supply the commonly accepted meaning of the term." *See Pomerance v. Berkshire Life Ins. Co. of Am.*, 654 S.E.2d 638, 640 (Ga. Ct. App. 2007). Doing so here,

"[s]uspension" is "[t]he act of temporarily delaying, interrupting, or terminating something." *Suspension*, Black's Law Dictionary (10th ed. 2014). To delay, interrupt, or terminate operations is to stop doing them for a period of time. One can't "terminate[] something" and still do that thing—even partially.

Second, reading "the policy as a whole, to give effect to each provision, and to interpret each provision to harmonize with each other," *Partin v. Ga. Farm Bureau Mut. Ins. Co.*, 770 S.E.2d 38, 41 (Ga. Ct. App. 2015) (plurality opinion), shows that the "suspension" must be a complete cessation of operations. The policy sets out the time period for when Nationwide's extended lost business income payments begin after the "suspension" of Transworld's operations. The extended lost business income coverage only begins after the damaged property was "repaired, rebuilt or replaced *and 'operations' are resumed*." To "resume[]" operations, they must have stopped in the first place. *See Resume*, Oxford English Dictionary (defining "resume" as "[t]o begin again or continue . . . after interruption") https://www.oed.com/dictionary/resume_v1 [https://perma.cc/3RNU-TF9K] (last visited Aug. 14, 2025).

Third, in diversity cases, where there is no binding precedent on a legal issue in the state courts, we "presume that state courts would adopt the majority view on a legal issue in the absence of indications to the contrary." *SA Palm Beach, LLC v. Certain Underwriters at Lloyd's London*, 32 F.4th 1347, 1358 (11th Cir. 2022) (quotation and brackets omitted). This is as true for interpreting

an insurance contract as it is for any other legal issue. *Id.* For the legal issue in this case, the interpretation of "suspension" in a lost business income provision, the near-universal view is that "[t]he plain and ordinary meaning of 'suspension' requires a complete cessation and does not support coverage when only a partial suspension occurred." *Forestview The Beautiful, Inc. v. All Nation Ins. Co.*, 704 N.W.2d 773, 775 (Minn. Ct. App. 2005); *see also Broad St., LLC. v. Gulf Ins. Co.*, 832 N.Y.S.2d 1, 5 (N.Y. App. Div. 2006) ("[I]n order for business interruption insurance to be triggered, there must be a 'necessary suspension,' i.e., a total interruption or cessation of operations." (citation modified)); *Buxbaum v. Aetna Life & Cas. Co.*, 126 Cal. Rptr. 2d 682, 692 (Cal. Ct. App. 2002) (concluding that a law firm that "continued to provide legal services after [a] flood and did not sustain a complete cessation of business" was not entitled to benefits under a policy requiring "suspension of operations"); *Home Indem. Co. v. Hyplains Beef, L.C.*, 893 F. Supp. 987, 991 (D. Kan. 1995), *aff'd*, 89 F.3d 850 (10th Cir. 1996) (finding that the common understanding of the term "suspension" is "a temporary, but complete, cessation of activity" and does not include "a slow-down or reduction in operations"); 11A Jordan R. Plitt et al., *Couch on Ins.* § 167:11 (3d ed. 2025) ("[A] business 'interruption' or 'suspension' triggering coverage typically involves a total cessation of business, not merely a slowdown or reduction of operations.").

There's no dispute that Transworld continued to operate during and after the 2018 loss. Because it did not terminate operations, the company was not entitled to lost business income under the policy.

*The Bad Faith Claims*

The district court granted summary judgment for Nationwide on Transworld's bad faith claims because the breach of insurance policy claims they were based on failed. The only argument Transworld makes on appeal is that, because the district court erred in granting summary judgment on the breach of insurance policy claims, the court also erred in entering judgment for Nationwide on the bad faith claims. But because we conclude that the district court properly granted summary judgment on the breach of insurance policy claims, we also affirm on the bad faith claims.

**AFFIRMED**.[7]

---

[7] Nationwide's motion to strike the reply brief or to file a supplemental brief is DENIED AS MOOT.